STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |
|---|---|
| In re: Miller Conditional Use Application }<br>(After Remand) } | Docket No. 59-3-07 Vtec |

## Decision On The Record

Appellants Charles C. Miller, Jr. and Carole B. Miller ("Appellants") appealed from a decision of the Town and Village of Ludlow Development Review Board ("DRB"), denying their conditional use application. Appellants are represented by Martin Nitka, Esq. The Town and Village of Ludlow ("Ludlow") is represented by J. Christopher Callahan, Esq. Now pending in this on-the-record appeal is Appellants' Motion for Summary Judgment and Ludlow's Objection thereto, as well as Ludlow's own Cross-Motion for Summary Judgment. Appellants argue that the delay between this Court's remand Order in Docket No. 159-7-06 Vtec and the DRB's decision entitles them to a deemed approval of their application. Ludlow argues that the deemed approval remedy is not applicable here and that the DRB's decision should be upheld in regards to all issues raised in Appellants' Statement of Questions.

## Factual Background

We first note that this Court is not charged with the responsibility of rendering factual findings in an on-the-record appeal. Rather, our role is to review the appealed decision from an appellate perspective, giving discretion to an appealed decision when there is substantial factual foundation in the record of the proceedings below. With that perspective in mind, we note that the following material facts concerning the proposed project, all of which we understand to be undisputed (unless otherwise noted), so as to give context to our analysis here.

In a similar vein, the Court granted Appellants' request and conducted a site visit on the subject property on August 8, 2007. The Court's site visit is not part of the record here; no testimony was taken and no record of the site visit was preserved. Rather, the Court conducted the site visit solely to assist in its review of the factual record relied upon by the DRB in rendering its Decision.

As noted above, the following facts are undisputed unless otherwise noted.

1. Appellants applied for a conditional use permit to construct an eight-acre gravel pit on the approximately 113.8-acre property they own at 125 Sears Farm Road in Ludlow. Notice of Decision, Ludlow Development Review Board (Feb. 21, 2007) ("Second DRB Decision").

2. The project would be located near the easterly boundary of Appellants' property, approximately halfway between the northerly and southerly boundaries. The proposed project would be located approximately 275 feet westerly of Route 100.

3. The project would be completed in three phases over a total of twelve years. Forty percent of the gravel would be removed in both of the first and second phases; the final twenty percent of the gravel would be removed in the third and final phase. March 13, 2006 Transcript at 7-10 ("March Transcript").

4. The project would access Route 100 by way of a 50 foot right-of-way over the Stryhas property, which is easterly of the property owned by the Appellant-Applicants.

5. The project as proposed would limit trips to and from the gravel pit to 25 round trips per day between the hours of 7 a.m. and 5 p.m.

6. The DRB held hearings on Appellants' application on March 13 and May 8, 2006.

7. The DRB first denied Appellants' application by its June 22, 2006 decision ("First DRB Decision").

8. Appellants appealed the First DRB Decision to this Court on July 11, 2006. That first appeal was assigned Docket No. 159-7-06 Vtec.

9. On September 11, 2006, Ludlow requested that this Court remand Docket No. 159-7-06 Vtec back to the DRB. Appellants filed a written objection.

10. After a conference with the parties, Merideth Wright, Environmental Judge, ordered Docket No. 159-7-06 Vtec remanded to the DRB by an Entry Order dated September 20, 2006.

11. After the case was remanded, the DRB did not consider any new or additional evidence; it did not schedule any additional evidentiary hearings.

12. The DRB then issued its Second Decision on Appellants' conditional use application on February 21, 2007, 134 days or approximately five months after the remand in Docket No. 159-7-06 Vtec. This Second DRB Decision again denied Appellants' application.

13. Appellant thereafter filed a second notice of appeal. This second appeal was assigned Docket No. 59-3-07 Vtec; it is the only active appeal concerning Appellants' conditional use application now pending before this Court.

14.     Appellants have moved for summary judgment on the issue of deemed approval pursuant to 24 V.S.A. § 4464(b)(1) and Ludlow Zoning Ordinance § 260.5.   Appellants also have submitted a memorandum that broadly argues that the factual bases for the DRB's decision were anecdotal, and presumably unreliable, in nature, thereby warranting that this Court render its own findings of fact.

15.     Ludlow filed its objection to Appellants' summary judgment motion and filed its own cross motion for summary judgment, seeking affirmation of the Second DRB Decision on all issues raised in Appellants' Statement of Questions.  Both parties' motions are now ripe for this Court's consideration.

## Discussion

The procedural posture of this case raises the unique issue of the applicability of the deemed approval remedy to a municipal determination that this Court has remanded back to the municipal board.  Appellants also contest the procedural standard of review this Court should apply to the appealed decision.  Because the standard of review may impact our analysis of all the issues, we first consider the appropriate standard of review.

## Standard of Review for On-the-Record Appeals

Appellants argue that this Court should review the record, then make its own findings and final decision, without regard to the findings made by the DRB.  Appellants assert that the precedent announced in In re Town of Sherburne, 154 Vt. 596 (1990), is not applicable to Environmental Court proceedings and that the statute governing on-the-record appeals to this Court – 24 V.S.A. § 4471 – does not specifically prohibit this Court from rendering its own findings, based upon the record below.  Appellants' Memorandum at 3; see also Sherburne, 154 Vt. at 603 (noting that the statute in question limited appellate review to the question of whether the Water Resources Board acted arbitrarily, unreasonably, or contrary to law).

Appellants argue that although 24 V.S.A. § 4471(b) requires that appeals of municipal panel decisions such as this shall be "on the record in accordance with the Vermont Rules of Civil Procedure," the Civil Rules do not prevent us from considering the evidence anew, without regard to the findings rendered by the DRB.  We find this suggestion curious, particularly because, if followed, the Court would be rendering findings based upon evidence that it did not receive, but rather was received by the DRB below.  Witness credibility would be difficult to gauge, since we did not hear the witnesses' testimony.  More important, because we find no legal

precedent that allows us to select the standard of review, we decline to follow the procedure Appellants here suggests.

Under Vermont law, a municipality that wishes to have appeals from its land use determinations reviewed on-the-record must go through the complete process of adopting and implementing the necessary procedures described in 24 V.S.A. §§ 4471 and 4472, the Vermont Municipal Administrative Procedures Act (24 V.S.A. §§ 1201-1210) and the Vermont Rules of Civil Procedure (V.R.C.P.). These provisions require a more purposeful adherence to procedure, including (but not limited to) the swearing in of all witnesses, an audio or video recording of all hearings sufficient to allow a transcript to be produced, and detailed written decisions that specify both findings of fact based upon the evidence presented and application of the zoning ordinance to those findings. Id.; see also In re Dunnett, 172 Vt. 196, 198-9 (2001).

Section 1209(b) of the Municipal Administrative Procedures Act requires that "[f]indings of fact shall explicitly and concisely restate the underlying facts that support the decision. They shall be based exclusively on evidence of the record in the contested hearing." Section 1209(c), in turn, requires the conclusions of law in the municipal decision to be based on their findings of fact in that particular case.

In an on-the-record appeal, the reviewing Court does not hold a trial to hear evidence; rather, the Court reviews the record of the proceedings before the DRB, including the documents provided to the DRB and the oral testimony presented at the DRB hearings. In re: Application of van der Weyden and Lewis, Docket No. 23-2-06 Vtec (Vt. Envtl. Ct. Nov. 29, 2006). If the record reveals substantial evidence in support of the findings rendered by the DRB, this Court is obligated to uphold the DRB decision. van der Weyden, Docket No. 23-2-06 Vtec slip op. at 2.

Unlike in Dunnett, there is no suggestion in the case at bar that the Ludlow DRB failed to conform to these statutory and Rule mandates in the procedure it followed in rendering the Decision that is now the subject of this appeal. We are aware of no claimed deficiencies in the procedures followed by the Ludlow DRB that would warrant a deviation in this appeal from the established procedures for on-the-record review.

When a zoning board applies local zoning ordinances and regulations to a set of facts, it performs a quasi-judicial function. Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 12-13 (1989). When a zoning board acts in a quasi-judicial manner, it is appropriate to analogize the zoning board's actions to those of an administrative agency. See id. (analyzing a quasi-judicial zoning

board action as it would analyze a quasi-judicial administrative agency action). The standard of review of factual findings rendered by administrative tribunals is, with very few exceptions, the substantial evidence rule. In re Grievance of Muzzy, 141 Vt. 463, 470 (1982); see also Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6 ("We affirm the factual findings of administrative tribunals when they are supported by substantial evidence") (internal quotations and citations omitted); accord Stephen G. Breyer, J., et al., Administrative Law and Regulatory Policy 258 (5th ed. 2002) ("The substantial evidence test is the dominant standard for judicial review of factual determinations by agencies, at least…in 'on the record' proceedings'").

This is analogous to the appellate review of judgments predicated on jury verdicts. Muzzy, 141 Vt. at 470. Evidence is substantial if it is relevant and a reasonable person, looking at the record as a whole, could accept it as adequate. Devers-Scott, 2007 VT 4, at ¶ 6. In addition, as the Wyoming Supreme Court noted, substantial evidence "is more than a scintilla of evidence"; a reviewing court "does not examine the record only to determine if there is substantial evidence to support the agency's decision, but it also must examine the conflicting evidence to determine if the hearing examiner could have reasonably made its finding and orders upon all of the evidence before it." Bonsell v. State ex rel. Wyo. Worker's Safety and Comp. Div., 2006 WY 114, ¶ 8, 142 P.3d 686, 688 (2006). We have explained that this requirement of examining the record as a whole serves as a link between the evidence and the findings. In re: Application of Blakeman, Docket No. 167-8-05 Vtec (Vt. Envtl. Ct. June 19, 2006).

This Court has held that in an on-the-record appeal, we must determine whether there is substantial evidence in the record as a whole from which the DRB's factual findings might be reasonably inferred. See Appeal of Lussier and Noe, Docket No. 116-5-02 Vtec (Vt. Envtl. Ct. Sept. 16, 2002) (citing In re Petition of Town of Sherburne, 154 Vt. 596, 604-605 (1990)). Regarding Appellants' contention that we may freely examine the record and render our own findings because the statute applicable here is dissimilar to that in In re Sherburne, we note that in the absence of statutory authorization, a de novo review is not presumed. State Dept. of Taxes v. Tri-State Indus. Laundries, 138 Vt. 292, 294 (1980). For appeals such as this, governed by 24 V.S.A. § 4471(b), there is no statutory authorization for appeals other than on–the-record appeals. See 24 V.S.A. § 4471(b) ("If the municipal legislative body has determined (or has been instructed by the voters) to provide that appeals of certain appropriate municipal panel determinations shall be on the record . . . then an appeal from such a decision . . . shall be taken

on the record"). If an appeal is not on-the-record under § 4471(b), then it is "governed by the Vermont Rules of Civil Procedure and such interested person shall be entitled to a de novo trial" in this Court. 24 V.S.A. § 4472(a). Thus, this Court may only proceed with its review in one of two ways: on-the-record or de novo; we are not authorized to interchange the manner of review in a specific appeal.

A de novo trial is a proceeding that is heard as though no prior action had been taken. See Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) (citing In re Poole, 136 Vt. 242 (1978)); see also State v. Madison, 163 Vt. 360, 368-69 (1995) (examining the differences between the terms "hearing de novo," "trial de novo," and "review de novo"). Appellants' suggestion that we review the record and derive our own conclusions from the record would, in application, be much more akin to de novo review than on-the-record review, whereby we apply the substantial evidence rule. This is not authorized by the statute; a de novo review is not presumed without statutory authorization. Therefore, we will apply the substantial evidence test to the factual findings challenged by the Appellants in this proceeding.

**Applicable Rules of Procedure**

Ludlow argues that we ought not consider any of Appellants' arguments on procedural grounds, alleging that Appellants have only made "general characterizations regarding the record" that are unsupported by appropriate citation to the record. Ludlow asks that we conclude that Appellants' pleadings are inadequate under V.R.A.P. 28(a)(4) and should be rejected as inadequately briefed. In order to evaluate whether Appellants' submissions are inadequate and undeserving of consideration, we must examine the rules of procedure applicable to this appeal.

The Vermont Rules for Environmental Court Proceedings govern the procedure for this Court. V.R.E.C.P. 1. Rule 5 governs appeals to the Environmental Court under 24 V.S.A. §§ 4471 and 4472, and makes the Rules of Appellate Procedure applicable in those appeals, to the extent that they are not modified by V.R.E.C.P. 2(b)-(e) and 5. Subdivisions (b) through (e) of Rule 2 govern the coordination of Environmental Court proceedings, discovery, pretrial conferences and orders. Rule 5 governs Environmental Court appeals more generally, including provisions for the construction of the record in on–the-record appeals and other provisions for notice, service, judgment, and remand. These Rules do not govern other procedural issues, such as the form of pleadings submitted to this Court. Rather, our Rules incorporate the Vermont Rules of Appellate Procedure by reference for the purpose of governing on-the-record pleadings.

The Vermont Rules of Appellate Procedure (V.R.A.P.) contain several provisions regarding the form of pleadings. Both appellants and appellees are required to file briefs containing a statement of the issues, tables of contents and authorities, a statement of the case, and an argument that must, among other things, contain citations to the record, appropriate authorities and statutes, and the reasons for the parties' contentions. V.R.A.P. 28(a)(1)-(4). Therefore, in an on-the-record appeal, it is appropriate for the parties to file briefs that conform to the Appellate Rules.

Ludlow argues that Appellants failed to fulfill the procedural requirement to submit a brief that cites to appropriate authorities and the record as directed by V.R.A.P. 28(a)(4). While it is true that some of Appellants' pleadings lack both citation to the record and do not take the form contemplated by the Appellate Rules, their pleadings are not so devoid of references to the record and to legal authority as to require us to go searching through the record for error. Leaving a reviewing court to conduct its own review of the record for error would be improper. Buttura v. Buttura, 143 Vt. 95, 98 (1983). Appellants here have provided us with sufficient notice of their claimed errors in the Second DRB Decision so as to allow us to proceed with our review of this on-the-record appeal.

We note that in this case, instead of filing briefs, both parties submitted motions for summary judgment. Appellants also submitted a request for finding of facts and an additional memorandum. Neither party pleads properly under a strict reading of the Appellate Rules. However, this Court has the authority to suspend the requirements of the Appellate Rules in order to expedite its decision. V.R.A.P. 2. Both parties have submitted sufficient legal arguments so as to provide this Court with sufficient notice of the legal issues in dispute. We are therefore not called upon here to violate the rule of Buttura. Rather than delay a decision on the merits, we will consider the merits and grant judgment where appropriate.

## Question 1: Deemed Approval

Appellants ask by their Question 1 whether the DRB's failure to make a decision within 45 days after the remand in Docket No. 159-7-06 Vtec entitles them to the deemed approval remedy available under 24 V.S.A. § 4464(b)(1) or a similar remedy available under § 260.5 of the Town of Ludlow Zoning and Flood Hazard Regulations ("Regulations").

A DRB or similar municipal panel is required to issue a decision within 45 days after the close of evidence. 24 V.S.A. § 4464(b)(1). If the DRB does not issue a decision within that 45-

day window, that failure results in the pending application being deemed approved on the 46th day. Id.

Ludlow has adopted a zoning ordinance that incorporates four versions of deemed approval. The first, codified at Regulations § 251.5, is nearly identical 24 V.S.A. § 4464(b)(1).[1] A second Regulation, dealing with variances, requires a decision within 45 days, and it also requires that the decision be sent by certified mail to all interested parties and filed with certain town officers. Regulations § 252.3. The third regulation, § 260.5, provides that the DRB "shall act to approve or disapprove any such requested conditional use within forty-five (45) days after the date of the final public hearing . . . and failure to so act within such period shall be deemed approval." The fourth regulation, dealing with planned unit developments, requires a decision within 45 days, and it also requires the applicant to file certain documents for recording in the Ludlow Land Records. Regulations § 270.7.

The third regulation, § 260.5, is applicable to the case at bar, as it is specifically applicable to conditional use applications. We must construe this Regulation as we would construe a statute. Appeal of Weeks, 167 Vt. 551, 554 (1998). Our goal is to affect the intent of the drafters, as evidenced by the plain text of the regulation. Where the meaning is clear, we must enforce the Regulation according to its terms. Murdoch v. Town of Shelburne, 2007 VT 93, ¶ 5. We must also avoid any construction that renders a regulation or portion thereof as superfluous. Id.

Taken as a whole, Ludlow's deemed approval scheme is analogous to that codified in 24 V.S.A. § 4464(b)(1). The Town has modified some of the deemed approval provisions to require additional notice and recording requirements. See Regulations §§ 252.3, 270.7. The provision applicable here, § 260.5, has no additional requirements, and merely requires a decision within 45 days. Therefore, we will interpret it by reference to the analogous deemed approval remedy in § 4464(b)(1).

"Deemed approval is 'intended to remedy indecision and protracted deliberation on the part of zoning boards and to eliminate deliberate or negligent inaction by public officials.'" In re McEwing Svcs., LLC, 2004 VT 53, ¶ 21, 177 Vt. 38, 46 (2004) (quoting In re Fish, 150 Vt. 462, 464 (1988)). Vermont deemed approval jurisprudence has taken a conservative approach to the

---

[1] The only difference is the substitution of "Developmental Review Board" in Regulations § 251.5 for the phrase "appropriate municipal panel," in § 4464(b)(1).

remedy: our Supreme Court has directed that the trial courts are only to apply the remedy when it would "clearly implement[] the statutory purpose." McEwing Svcs., 2004 VT 53, ¶ 21. The concern that underpins this conservative approach is to restrict the application of the deemed approval doctrine in a manner that grants a permit to a use "wholly at odds" with the local zoning scheme. In re Appeal of Newton Enterprises, 167 Vt. 459, 465 (1998).

The Supreme Court has repeatedly cautioned against employing the deemed approval doctrine to remedy "technical defects" in the decision-making process, such as a timely, yet defective board vote; untimely notice following a timely board decision; failure to mail a written decision within the statutory period; and defective notice of the hearing where the applicant had attended the hearing and participated notwithstanding defective notice. See id. (recounting the various "technical defects" the Supreme Court has rejected as bases for deemed approval).

The procedural posture of this case is unique as it relates to deemed approval. Here, the DRB rendered its First Decision on June 22, 2006, exactly forty-five days from the date it closed its hearing on Appellants' application (i.e. May 8, 2006). At the initial conference in their first appeal, and at the request of Ludlow, this Court remanded Appellants' conditional use application back to the DRB pursuant to V.R.E.C.P. 5(i) so that the DRB could reconsider its decision and issue more complete findings. The DRB held no further evidentiary hearings, but thereafter issued its Second Decision.

Appellants contend that the failure of the DRB to render its Second Decision within forty-five days of this Court's remand order entitles them to have their conditional use application deemed approved. For the reasons more fully stated below, we find no violation of the state or municipal deadlines for rendering a decision and therefore decline to rule that Appellants are entitled to an automatic deemed approval of their conditional use application.

Neither the statutory mandate of 24 V.S.A. § 4464(b)(1) nor the similar deemed approval mandate in Regulations § 260.5 speak to the specific situation presented in this case: what time limit, if any, is imposed upon an appropriate municipal panel to render a decision when an application is remanded back to the panel from this Court. Clearly, the exact language of the regulations cannot apply, since the final evidentiary hearing most often has taken place many

months before this Court remands a decision back to the municipal panel.[2]  The remand Order from this Court did not compel the DRB to take further evidence, but merely to render more complete findings.  It would therefore have been impossible for the DRB, after remand, to issue its Second Decision within 45 days of its close of the evidence on May 8, 2006.

Section 4464 only refers to actions by an appropriate municipal panel.  No mention is made of actions by this Court or of requirements imposed upon a municipal panel after a remand order from this Court.  Id.

Land use determinations, more than many other forms of litigation, cry out for the rendering of timely decisions, both at the municipal panel in the first instance and by this Court on appeal.  The right of a property owner to have a speedy determination of what she may do with her land, and the right of her neighbors to be protected from the nuisance of unlawful land uses imposes an obligation upon this Court and the municipal panels before it to render timely decisions.  But we cannot find that the 45 day response period in 24 V.S.A. § 4464 is applicable to this Court or to municipal panels directed to revisit their decisions on remand from this Court.  To do so would require us to read language into the statute that is just not there.

We find no guidance in 24 V.S.A. § 4464 for how its mandates intersect with V.R.E.C.P. 5(i).  In construing this statute, we consider the whole statutory scheme, including the effects, consequences, and spirit of the law.  In re Loyal Order of Moose, Inc., Lodge # 1090, 2005 VT 31, ¶ 8, 178 Vt. 510, 512.  In light of the conservative approach that must be taken to deemed approval, and in light of the non-wooden application of the statute directed by our Supreme Court in its Newton Enterprises decision, we decline to read into the deemed approval doctrine an applicability to municipal panel decisions after a Court remand for reconsideration and further findings.  We therefore decline to deem Appellants' application approved by virtue of the 134 days it took the DRB to render its Second Decision after remand from this Court.[3]

---

[2]  In the case at bar, Judge Wright's remand Order was entered on September 20, 2006, some 134 days after the close of evidence in this application.  It would therefore have been practically impossible for the Ludlow DRB to issue its Second Decision within 45 days from the date of the close of evidence.

[3]  Given that there appears to be no statutory limitation on the amount of time a municipal panel may take in rendering its decision after remand, one remedy has become apparent to us:  that in future cases, the Court consider setting a deadline on remanded decisions, after recommendations are made by the parties to the case.

**Question 2**

Appellants next ask in their Question 2 whether the DRB erred by ignoring a provision of the Ludlow Town Plan that announces the goal of promoting the economic benefits of wise mineral resource management, including the management of gravel.

Town plans are general statements or guidelines to community development. Kalakowski v. John A. Russell Corp., 137 Vt. 219, 225-26 (1979). They are statements of a community's goals, needs and desires, and, while important, are stated in a more abstract and advisory manner. Id. "Zoning bylaws, on the other hand, are specific and regulatory." Id. at 225. Town plans are therefore only enforceable to the extent that they have been implemented by zoning or other municipal regulation. Id. at 225-26; see also Blakeman, Docket No. 167-8-05 Vtec slip op. at 11 (Vt. Envtl. Ct., June 19, 2006).

The purpose of the Ludlow Zoning Regulations is "to implement and be consistent with" the Town Plan. Regulations § 120. However, as the Supreme Court has noted, partial implementation of a town plan is not unusual because of the abstract and advisory nature of town plans. Kalakowski, 137 Vt. at 225. That is the situation here. While the Ludlow Town Plan announces the goal of promoting the economic benefits of wise mineral resource management, the Ludlow Regulations have not translated that goal into specific and regulatory zoning or subdivision bylaws that mandate the allowance of mineral extraction in certain areas. Therefore, even if the DRB ignored the Town Plan, and the record before us does not support such an allegation, this cannot not be a basis of relief for Appellants. We therefore decline to overturn the DRB decision on appeal here on this basis.

**Question 3**

Appellants next ask in their Question 3 whether the DRB erred when it stated that the proposed development does not have road frontage when, according to Appellants, the parcel upon which the development is proposed has in excess of 100 feet of frontage "albeit on a town road which Applicant does not intend to use as access to the proposed gravel pit[.]" Ludlow responds that the road frontage "bears no relationship to the project." We agree and therefore decline to reverse the DRB on this Question.

In the Ludlow Residential-Commercial District, all uses must have a minimum of 100 feet of road frontage. Regulations § 460. Lot frontage is defined as the "[d]istance measured along the width of a lot at the street line." Regulations Art. 7. The DRB found that the proposed

development would have no frontage and be accessed by a 50 foot right-of-way, citing a letter of intent from the Agency of Transportation dated May 9, 2006 ("AOT letter of intent"). Second DRB Decision 9-10.[4]

The Dufrense-Henry plans submitted on behalf of Appellants, specifically sheets C1 through C5, all show a right-of-way to be used by Appellants' proposed gravel pit over the adjacent land of Stryhas. These plans make no specific reference to the road frontage Appellants now claim should be the basis for overturning the DRB decision. Appellants did not present any evidence as to how their proposed gravel pit would access the road frontage, nor have they explained how this alleged error in the DRB's findings was relied upon by the DRB in rendering its Second Decision.

The Dufrense-Henry plans indicate that the access for Appellants' project will solely be over a right-of-way easement encumbering the adjoining Stryhas property. A 15-foot wide gravel road will be constructed over this right-of-way, so that the proposed gravel pit will have access to Route 100. The Dufrense-Henry plans show that an opposite corner of Appellants' property has frontage on a town road, but the amount of frontage is not indicated. However, at the March 13, 2006 hearing, Mr. Pete Andrews, Appellants' engineer, testified that the 114-acre parcel has frontage on the "Cyr's [sic] Farm Road."[5] March Transcript at 32. The Town of Ludlow Grand list map shows a "Sears Farm Road" entering the southerly boundary of a parcel of land that is served by a 50-foot right-of-way on its easterly boundary. The parcel is not labeled on this map, but it is oriented in much the same way as the parcel on Appellants' Location Map, and is apparently Appellants' property.

The record reveals an uncontested representation that the opposite corner of Appellants' parcel has road frontage. But the record also reveals uncontested representations, by Appellants and their engineers, that their proposed gravel pit will only occupy a small, eight acre portion of their nearly 114-acre property, will have no road frontage on Route 100 and will access Route 100 over the Stryhas right-of-way. Given the context of Appellants' proposed gravel pit and the portion of their property that the gravel pit will occupy, we do not find error in the DRB's finding that the project does not have road frontage. While it was error for the DRB to conclude

---

[4] The Second DRB Decision is organized into sections and subsections, but this organization is not consistent. We will use the page numbers instead of the section designations.

[5] May be a transcription error.

that Appellants' entire property enjoys no road frontage, we see no evidence in the record that this technical defect should be a basis for overturning the Second DRB Decision.

**Question 4**

Appellants next ask in their Question 4 whether the DRB erred by imposing Lakes District zoning regulations on their application. In support of this claim, Appellants direct us to several parts of the Second DRB Decision where the Lakes District is mentioned. Appellants argue that the Second DRB Decision has the practical effect of extending the impact of the Lakes District regulations beyond its geographic limits. Ludlow responds by asserting that Appellants have misconstrued the Second DRB Decision; that the DRB merely considered the possible impact of the proposed project on adjacent properties that are in the Lakes District. We believe that Ludlow's reading of the Second DRB Decision is correct and therefore decline to overturn it on these grounds

It does not appear from our review of the Second DRB Decision that the DRB imposed the Lakes District regulations upon Appellants' application. In the section labeled "Findings of Fact," the decision twice mentions that the proposed gravel pit would overlook and be adjacent to the Lakes District. Second DRB Decision at 5, 8. In the section labeled "Conclusions of Law," the DRB concludes that the proposed gravel pit would result in undue, adverse effects for the neighboring Lakes District properties. Second DRB Decision at 13.

The DRB rendered all these findings in the context of discussing conditional use review, which is governed by Regulations §§ 260 et. al. Section 260.3 requires the DRB to find that the proposed conditional use will not result in an undue adverse effect on the character of the area, defined by the zone within which the project is located, and "specifically stated policies and standards of the municipal plan."

One of the goals of the Town Plan is to preserve and enhance high quality waters in the Lakes District. Town and Village of Ludlow, Vermont Municipal Plan at 9-4 (Town Plan). The Town considers it a fragile area, and has articulated a protection policy, including reduced development in that area. Town Plan at 9-4, 11-2. Because the policies contained within the Town Plan may be considered when reviewing a conditional use application, it was not inappropriate for the DRB to consider the impact of the proposed gravel pit on the adjoining Lakes District properties. We therefore do not find sufficient error here to overturn the Second DRB Decision.

**Question 5**

Appellants next asks whether the DRB's third conclusion of law, that the project would result in undue adverse effects upon the traffic on the area roads and highways, is supported by the record. The DRB specifically concluded that Appellants did not provide sufficient evidence to support the conclusion that the project could "mitigate traffic issues and . . . not result in undue adverse effects . . .." Second DRB Decision at 16.

Regulations § 260.3 requires the DRB to determine whether the proposed use will result in an undue adverse effect on traffic on area roads and highways. The DRB's factual findings relating to traffic noted that the project would access Route 100 by way of a right-of-way over the adjacent Stryhas property; that the hours of operation at the project would be Monday through Friday, 7 a.m. to 5 p.m.; and finally that no evidence of a traffic study had been submitted to the DRB considering the impact of trucks entering Route 100 from the project site by way of the right-of-way. Second DRB Decision at 8-9.

The DRB also noted that Route 100 is a principal arterial highway for Ludlow and the surrounding region, that it currently suffers from congestion, and that the DRB was without sufficient evidence to conclude that the project could mitigate and not aggravate traffic issues. The DRB noted that, as with all gravel pits, this project would involve the coming and going of large trucks, some laden with rock and gravel. Based upon these factual findings and because of the absence of a traffic report giving some definition to the traffic to and from this gravel pit, the DRB concluded that the proposed project would result in undue adverse effects upon traffic. Id. at 15-16.

We note that neither party has made citations to the record on this factual issue. Our own review of the record reveals that during the course of the 2006 DRB hearings, the issue of traffic centered on the noise trucks entering and exiting the proposed project would make during hours of operation, but not on issues of delay and congestion. See, e.g., March Transcript at 21, 26 (concerning neighbors' worries about truck-made noise); see also May 8, 2006 Transcript at 23 ("May Transcript") (same). Appellants' application contained information regarding sight distances for the proposed access as well as the representation that the proposed access has been used for access to a former, now-closed gravel pit. Finally, the DRB took into evidence the AOT letter of intent, referenced above, along with some related emails discussed traffic-related issues. However, our review of the record as a whole has not yielded any discussion of whether the

proposed project would have an undue adverse effect on traffic, specifically on the issues of delay and congestion. The Ludlow Town Plan has announced the reduction of traffic delays on Route 100 as one of its goals. Town Plan at 7-5. We have found no information submitted by Appellants that discusses these issues.

Because of the lack of information and discussion of traffic congestion and mitigation, issues that the Town Plan memorializes as important to this community, we find the DRB's conclusion that Appellants did not produce sufficient evidence for the DRB to render a positive finding in regards to the project's impact on area traffic is substantially supported by the record as a whole. We therefore decline to base a reversal of the Second DRB Decision on this challenge.

**Question 6**

Appellants next ask whether those opposing the issuance of a conditional use permit have the burden of proof to show that a project will have an undue adverse affect on traffic and, if so, whether that burden was met. In an on-the-record appeal, we will review a DRB decision for whether it correctly applied the municipal ordinance. In re: Application of van der Weyden and Lewis, Docket No. 23-2-06 Vtec (Vt. Envtl. Ct. Nov. 29, 2006).

We are often called upon to determine which party carries the burden of proof, sometimes broken down into the initial burden of production and the final burden of persuasion. To answer such questions, particularly as to a specific criterion, we look to the applicable ordinance or statute. We construe zoning regulations using the traditional tools of statutory construction. In re: Kim Wong Notices of Violation, Docket Nos. 169-7-06 Vtec and 293-12-06 Vtec slip op. at 2 (Vt. Envtl. Ct. Mar. 12, 2007). We construe words according to their plain and ordinary meaning, giving effect to the whole of the ordinance, so that no language is surplusage and so that the construction does not produce an absurd result. Id.

For a conditional use to be approved in Ludlow, "[the DRB] must find that the proposed conditional use shall not result in an undue adverse effect on . . . [t]raffic on roads and highways in the vicinity." Regulations § 260.3. The language of the ordinance does not specifically mention burdens of proof or upon which party such burdens may rest. The Regulations relating to conditional use approval speak in terms of the DRB finding that the application meets the specific conditions of the Regulations. See, e.g., Regulations § 260 ("'Conditional Uses' are permitted only by approval of the [DRB], if . . . the [DRB] . . . determines that the proposed use

shall conform to the general and specific standards prescribed in this Section"). In the absence of specific references to burdens of proof, we read these provisions as placing the burden on the application proponent to show that the application meets the conditional use standards. See In re: Pierce Woods PRD and Subdivision Application, Docket No. 33-2-06 Vtec slip op. at 10 (Vt. Envtl. Ct. Feb. 28, 2007) appeal docketed, No. 2007-121 (Vt. Sup. Ct. Apr. 4, 2007) (concluding that in municipal appeals, an applicant carries the initial burden of production and ultimately the final burden of persuasion that their application comports with the zoning regulations).

Moreover, to hold that application opponents have the burden of demonstrating the negative aspects of a proposed project could have the absurd effect of an application gaining approval that imposes an undue effect, where there was no opponent to the project present to present that evidence. We conclude that, particularly where there is no expression in a municipal ordinance to the contrary, an applicant carries the burden of proof to show that their proposed project conforms with the Regulations.

For these reasons, we decline to overturn the Second DRB Decision on this basis.

**Questions 7, 8, and 9**

The DRB in its Second Decision concluded that the proposed project would result in undue adverse effects on the character of the area affected, citing, among other concerns, the effect of the project on wildlife habitat and the scenic quality of the area. Appellants challenge these conclusions in their Questions 7 through 9. Appellants argue that the scenic quality of the area will not be adversely affected because the area already has a depleted gravel pit and commercial self-storage facility (Question 7); Appellants further allege that the DRB failed to consider the ameliorative effect of completing the project in stages (Question 8); and Appellants challenge the conclusion regarding presence of wildlife and wildlife habitat as being based upon anecdotal testimony (Question 9). We consider these questions together because they all generally relate to the "character" of the area potentially affected.

Questions 7 and 8 seem intertwined: the question of whether the project would result in undue adverse effects upon pre-existing conditions is logically related to whether Appellants can ameliorate the project's effects. Regarding the challenge that the DRB did not adequately considered the adjacent, now-operating storage facilities and the now-closed, depleted gravel pit, we note that several abutting landowners objected to the project, many referencing the annoyance of the former gravel pit and asserting that Appellants' project would harm the scenic

beauty of the area. See, e.g., Gloria Vey Hendon, Letter to DRB (March 3, 2006) (displaying concern over projects effect on area's beauty); see also Darline K. and Evandro F. Braz, Letter to DRB (May 4, 2006) (complaining that they would not get the peaceful enjoyment of their land and scenic view if project approved). These concerns were presented in the form of letters and testimony at the two public hearings on the issue. See, e.g., March Transcript at 32 (asking whether access to the project could be moved to a less pristine area).

In response to these concerns, Appellants offered that they could complete the project in three stages with immediate reclamation after each stage so that no more than three acres would be affected at any one time. Appellants' amelioration plans also include limiting the hours of operation at the gravel pit, constructing an earthen berm and a trench in which its rock crusher will operate, so as to minimize the noise impacts off-site. However, given the testimony from landowners around the site, we cannot say that the DRB's Second Decision was not supported by substantial evidence, considering the record as a whole. Appellants did little to rebut the multiple assertions that their gravel pit would have an adverse impact on the overall character of the area. Based upon this record, we cannot conclude that the Second DRB Decision is not adequately supported.

In the context of these Questions, it bears repeating that our responsibility is to determine whether the record, taken as a whole, presents sufficient support for the factual determinations and legal conclusions announced by the DRB. 24 V.S.A. § 4471(b). To substitute our own factual conclusions for those of the DRB would be a degradation of the on-the-record review process that Ludlow has lawfully implemented.

On the issue of wildlife habitat, we reject the Appellants' assert that the DRB's findings were supported by anecdotal evidence only. There was some anecdotal evidence about the presence of wildlife and wetlands. March Transcript at 36, 43-46. This anecdotal evidence was supplemented by a wetlands map included in Applicants' presentation. See Dufrense-Henry Wetland Inventory Map C1. Our review of the record finds no evidence in rebuttal from Appellants, nor have they made citation to evidence in the record which rebuts the DRB's finding.

Anecdotal or circumstantial evidence is often not the most credible evidence offered in a contested hearing, but in the absence of direct evidence, anecdotal or circumstantial evidence can provide a sufficient foundation for a DRB's findings. We conclude that the anecdotal evidence

found in the DRB record, supplanted by Appellants' own Wetlands Inventory Map, provides a substantial enough foundation for us to leave the Second DRB Decision undisturbed on this issue.

**Question 10**

Appellants' next question the DRB's reliance on testimony that the water table was too high to support Appellants' plan to control noise from the gravel pit by placing the pit's crusher in a trench to be dug behind the proposed earthen berm. Appellants specifically ask in their Question 10 whether this can be a basis for denying their application.

The DRB noted in its Second Decision that there was testimony that the water table in the proposed projects area was too high to allow the Appellants to excavate a trench in which to place the gravel pit's crusher. The DRB questioned the practicality of this noise, dust, and visual impact amelioration scheme and asserted that Appellants did not respond to the neighbor's water table concern. Second DRB Decision at 16. This same concern was raised at the second public hearing on this issue. May Transcript at 20-23.

The DRB may only approve those applications that comport with the Regulations. Regulations § 260. It was therefore appropriate for the DRB to consider the testimony offered regarding the water table, and to express its concern when Appellants didn't offer evidence in response. Because the rock crusher trench and earthen berm are integral to Appellants' mitigation scheme, and because Appellants did not respond to these concerns, the record provides an adequate basis for the DRB's conclusions on the noise impacts expected to be generated by Appellants' project. We will therefore not disturb the Second DRB Decision on this basis.

**Question 11**

Appellants next question whether the DRB may conclude that noise from the proposed project will be excessive when an expert noise study concludes otherwise. Ludlow responds with its contention that this noise study was not performed properly because it was not conducted at the property lines as required by Regulations § 550.1 (noise level not to exceed decibel levels at the property line)(emphasis added). Appellants' expert noise report includes maps indicating where the noise level samples were taken. Eddie Duncan and Kenneth Kaliski, Letter to Peter Andrews (March 2nd, 2006). None of the maps included in the report show the boundary lines. Id. However, the maps do indicate that at least one of the noise level samples was taken easterly

of Appellants' property, across Route 100, and another sample was taken near what appears to be the farmhouse contained within the property. The DRB's conclusion that the noise level samples were not taken at the property lines is supported by substantial evidence in the record. Its conclusion on this issue will remain undisturbed.

**Question 12**

Appellants next question whether the DRB may deny an application for a conditional use permit without attempting to impose conditions to address the application's deficiencies. Ludlow responds that the DRB is under no obligation to impose conditions and asserts that it is an applicant's duty to address concerns regarding undue effects. We agree with Ludlow in this regard.

The Regulations give the DRB the discretionary authority in granting a conditional use to impose "such additional reasonable conditions and safeguards, as it may deem necessary to implement the purposes of the municipal plan and [the regulations]." Regulations § 260. The DRB may also set conditions as part of site plan approval, but only on the issues of adequacy of traffic access and circulation, parking, landscaping, and screening. Regulations § 260.2. The plain meaning of this language permits, but does not require, the DRB to impose conditions if it chooses to grant approval. The Regulations impose no obligation upon the DRB to save a deficient application by attaching conditions that would bring it into compliance with the Regulations. Instead, the DRB has the power, if it chooses to exercise it, to attach conditions that further the purposes of the Town Plan and the Regulations. The DRB here acted properly and within its discretion when it chose not to impose conditions. It's denial of Appellants' conditional use application will not be disturbed on this basis.

**Question 13**

Appellants submit in their final Question that the practical effect of the Second DRB Decision was to "re-write the Ludlow Zoning Ordinance and the Town Plan by banning gravel pits . . . in the vicinity of the Lakes District since the reasons enunciated in the Decision would be applicable to any application for a gravel pit in those districts in that area[.]" We decline to address this Question as it does not present an actual justiciable case or controversy; to address it would require us to exceed our constitutional mandate. See In re S.N., 2007 VT 47, ¶ 9 ("The Vermont Constitution confers judicial authority only 'to determine actual controversies arising between adverse litigants'") (quoting In re Constitutionality of House Bill 88, 115 Vt. 524, 529

(1949)). It would it be presumptuous of us to consider the future ramifications of this DRB Decision on other properties or projects, and would also require us to render an advisory opinion, which would be improper. See In re 232511 Investments, Ltd., 2006 VT 27, ¶ 19, 179 Vt. 409, 417 (2006) (refusing to consider hypothetical permit situations). Accordingly, this question is dismissed because this Court lacks jurisdiction to render the requested advisory opinion.

## CONCLUSION

For all the forgoing reasons, we conclude that the Ludlow DRB Decision of February 21, 2007 is substantially supported by the record in this on-the-record appeal and do hereby **AFFIRM** that Decision.

A Judgment Order accompanies this Decision. The current proceedings before this Court are now concluded.

Done at Berlin, Vermont this 5 th day of November, 2007.

_____
Thomas S. Durkin, Environmental Judge

- 20 -