## State of Vermont v. Jason Madison

[658 A.2d 536]

No. 95-046

Present: **Allen, C.J.,**[1] **Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 1, 1995

---

[1] Chief Justice Allen sat at the hearing in this case but did not participate in the decision.

*Jeffrey L. Amestoy*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Paolini*, Barre, for Defendant-Appellant.

*Robert Appel*, Defender General, Montpelier, Amicus Curiae.

**Per Curiam.** Today, we consider whether use of the term "review de novo" in the recently approved bail amendment to the Vermont Constitution (Proposal 7) and related legislation, 13 V.S.A. § 7556(d), requires a justice of this Court, when reviewing a district court's decision denying bail, to conduct a new evidentiary hearing without considering the record created in the district court. We conclude that the bail amendment, which allows the district court to deny bail to a person charged with a violent felony if evidence of guilt is great and the accused poses a substantial threat of violence to another person,

does not authorize two full evidentiary hearings, as urged by defendant. Our conclusion rests upon the meaning of the term "review de novo" as a legal term of art.

In adopting Proposal 7, the voters of Vermont expressed their desire to permit pretrial detention, in appropriate circumstances, of those accused of violent crimes so as to prevent further harm to the victims of the crimes and to others. According to defendant, this expansion of the State's authority to hold a person without bail demands that the person be accorded a full evidentiary hearing before the district court and, if the district court denies bail, a second full evidentiary hearing as soon as possible before a justice of this Court. In defendant's view, the hearing before a justice must proceed as if the district court hearing had never occurred. Consequently, any and all witnesses or deponents, including traumatized victims offering sensitive testimony, would be required to repeat their previous testimony at the second hearing, which is subject to further review by a three-member panel of this Court. Vt. Const. ch. II, § 40. Apart from our conclusion, discussed in detail below, that such a procedure is not called for by the language of the constitution and the accompanying legislation, we believe that the negative aspects of requiring a second full evidentiary hearing — the probable trauma to victims, the inevitable waste of scarce judicial resources, and the resultant delay in the bail decision — outweigh the questionable value of the procedure.

In contrast, applying the plain meaning of the term "review de novo," as we have done, minimizes those negative aspects while retaining virtually the same standard of review. Under this procedure, a single justice must consider whether to deny bail without giving the usual deference to the district court's bail decision. Cf. 13 V.S.A. § 7556(b) (district court's order detaining person pending trial "shall be affirmed if it is supported by the proceedings below"). The justice must review the record created in the district court, including the transcript or videotape, and make an independent determination based on that record. Significantly, the reviewing justice may also consider additional evidence or may require witnesses from the district court proceeding to testify again so long as the party seeking admission of the additional evidence shows good cause for doing so.

The only difference between this procedure and the procedure advocated by defendant is that the latter would require all witnesses or deponents to repeat their testimony, regardless of the need. Of course, without a second full evidentiary hearing, defendants would

not be able to place traumatized victims on the stand a second time on the issue of bail in the hope that they will recant previous testimony or that they will make statements inconsistent with their earlier testimony. Neither the language of the bail amendment nor due process, however, requires a procedure that provides such opportunities.

In sum, the procedure outlined herein preserves independent review of decisions denying bail while providing other advantages. First, it protects witnesses, often crime victims, from being forced needlessly to repeat traumatic or sensitive testimony. Second, it increases the likelihood that incarcerated defendants will obtain a speedy bail decision. Third, it prevents the waste of scarce judicial resources and assures that the district court proceedings do not become a sham, serving only as a forum for defendants to feel out weaknesses in the prosecutor's case. Long ago, when de novo trials were common, one of the great legal reformers of this century pointed out the folly of a system in which two courts conducted separate evidentiary hearings of the same matter:

> The usual American plan of trial in the first instance by a lay magistrate, followed, since he is not trusted, by a retrial to a jury in a higher court on appeal, and then followed by review in an appellate court, is indefensible. There should be but one trial, and but one review of that trial.

Roscoe Pound, *The Administration of Justice in the Modern City*, 26 Harv. L. Rev. 302, 327 (1913); see Susan Carbon, Larry Berkson & Judy Rosenbaum, *Court Reform in the Twentieth Century: A Critique of the Court Unification Controversy*, 27 Emory L.J. 559, 565 (1978) (in nonunified court systems, appeals are sometimes tried de novo instead of on the record, "effectively relegating the first trial to a status no greater than a mere discovery proceeding").

## I. *The Law*

By vote of the electorate on November 8, 1994, Chapter II, § 40 of the Vermont Constitution was amended to provide the following exception to the general rule that persons are bailable by sufficient sureties:

> (2) A person accused of a felony, an element of which involves an act of violence against another person, may be held without bail when the evidence of guilt is great and the court finds, based upon clear and convincing evidence, that

the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of release will reasonably prevent the physical violence. A person held without bail prior to trial under this paragraph shall be entitled to *review de novo* by a single justice of the Supreme Court forthwith.

(3) . . . .

A person held without bail prior to trial shall be entitled to review of that determination by a panel of three Supreme Court justices within seven days after bail is denied.

(Emphasis added.)

The bail amendment's accompanying statute, Act 143, took effect upon the governor's certification of the constitutional amendment on December 13, 1994. Act 143 tracks the language of Proposal 7 in adding to and amending chapter 229 of Title 13:

### § 7553a. Acts of violence; denial of release on bail

A person charged with an offense that is a felony, an element of which involves an act of violence against another person, may be held without bail when the evidence of guilt is great and the court finds, based upon clear and convincing evidence, that the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of release will reasonably prevent the physical violence.

### § 7556. Appeal from conditions of release

. . . .

(d) A person held without bail under section 7553a of this title prior to trial shall be entitled to *review de novo* by a single justice of the supreme court forthwith.

(e) A person held without bail prior to trial shall be entitled to review of that determination by a panel of three supreme court justices within seven days after bail is denied.

(Emphasis added.)

On December 15, 1994, following adoption of the bail amendment, this Court promulgated an emergency amendment to V.R.A.P. 9, which provides in relevant part, as follows:

### (b) Review of Denial of Release.

(1) Denial of Release under 13 V.S.A. § 7553a.

. . . .

(B) Review shall be requested by application to the Supreme Court with reasonable notice to the state. The person seeking review shall furnish to the Court the record of the proceedings before the judicial officer. . . . The reviewing justice shall set the time and place of the hearing, which may be conducted by telephone.

(C) *Review* shall be *de novo on the record* presented by the parties *and such additional evidence as is authorized by the reviewing justice for good cause shown.* A party who seeks to offer additional evidence shall present to the reviewing justice a written specification of the evidence sought to be offered at least 24 hours prior to the time set for the hearing.

(Emphasis added.)

On January 25, 1995, the district court applied the new law in denying bail to defendant, who was charged with two counts of sexual assault, neither carrying a life sentence. Defendant sought review de novo by a single justice of this Court and immediately challenged the procedure set forth in V.R.A.P. 9(b)(1)(C). The reviewing justice referred the issue to the full Court.[2] Defendant argues that Rule 9(b)(1)(C) violates the bail amendment and § 7556(d) by permitting a single justice to review denial of bail based solely on the record made at the initial proceeding before the district court. According to defendant, in adopting the term "review de novo," the people of Vermont and the legislature intended to provide defendants with a second full evidentiary hearing before a justice of this Court. Further, in defendant's view, the rule violates his right to due process by not affording him sufficient procedural safeguards before permitting bail to be denied pending trial.

## II. *The Meaning of "Review De Novo"*

Defendant and amicus Defender General argue that the interpretation of Proposal 7 contained in Rule 9 thwarts the will of the people of Vermont and the legislature by not according defendant a hearing before a justice as if the first hearing in district court had never happened.

---

[2] All parties agreed that review by the full Court was the appropriate method to resolve the question. Neither party has argued that the decision should be made by three justices rather than five.

As an initial matter, we address defendant's argument that the intent of the legislature in amending the bail statute, not the intent of the voters in adopting Proposal 7, must control our decision. Citing *State v. Lambert*, 145 Vt. 315, 487 A.2d 172 (1985), defendant contends that this Court must provide him the process intended by the *legislature* because the constitutional amendment is not self-executing. Amicus expands on this contention, arguing that if the legislature had not passed Act 143, the district court would not have had any authority to hold defendant without bail solely on the basis of the bail amendment. We reject this argument.

In *Lambert*, we considered whether a 1982 amendment to the Vermont Constitution impliedly overruled the existing bail statute. The constitutional amendment provided that persons committed for offenses punishable by death *or life imprisonment*, when evidence of guilt was great, were not entitled to bail as a matter of right. *Lambert*, 145 Vt. at 316, 487 A.2d at 172. The defendant was charged with second-degree murder, which carried a maximum sentence of life imprisonment. The district court determined that the evidence of guilt was great, and applying the bail amendment, exercised its discretion to deny bail. This Court held that the district court erred in not considering the bail statute, which provided that any person charged with an offense not punishable by death had to be released pending trial unless the court determined that release would not reasonably assure the person's appearance or would endanger the public. *Id.* at 317-18, 487 A.2d at 173. Noting that the bail statute was "consonant with" the constitution because it neither exceeded any constitutional limitations nor infringed on any constitutional rights, this Court held that the defendant was entitled to a new bail hearing to determine her eligibility under the statute. *Id.* at 318, 487 A.2d at 173.

Our holding in *Lambert* does not support the argument that the 1994 bail amendment required an enabling statute to give it force. The amendment affirmatively declares that a person accused of a violent felony may be held without bail if certain specific criteria are met. The disputed language — review de novo — is exactly the same in the statute and the constitution. The legislature's decision to track precisely the language of Proposal 7 indicates that it intended Act 143, which took effect upon the adoption of Proposal 7, to have the same meaning as the bail amendment. Even if we assume the legislature could enact a statute inconsistent with the detailed standard of the constitutional amendment because the statute af-

forded defendants greater procedural safeguards than those contained in the amendment,[3] there is no indication that the legislature intended to do that here. Accordingly, in determining the meaning of the term "review de novo," we look primarily to the intent of the voters in adopting the amendment, but we also consider the intent of the legislature in adopting Act 143.

## A. *Plain Meaning*

■ Whether we consider the intent of the constitutional amendment or the statute, we first look to the plain meaning of the language in question. See *State v. International Collection Serv., Inc.*, 156 Vt. 540, 542, 594 A.2d 426, 428 (1991) (although overall aim is to give effect to intent of legislature, we must look first to plain meaning of statute); *State v. Yudichak*, 147 Vt. 418, 420, 519 A.2d 1150, 1151 (1986) (in giving effect to intent of legislature, we presume that plain, ordinary meaning of statutory language is intended); see also *Martin v. State*, 410 S.E.2d 474, 476 (N.C. 1991) (in determining will of people with respect to constitutional amendment, court must give meaning to plain language of amendment). Absent the existence of an official voter's pamphlet that indicates the meaning of the language at issue, see *City of Tacoma v. Taxpayers of City of Tacoma*, 743 P.2d 793, 797 (Wash. 1987), the "most obvious way to divine what meaning 'the great mass of the people themselves would give' any word or phrase would be the common meaning of the language used." *Walker v. Wolverine Fabricating & Mfg. Co.*, 391 N.W.2d 296, 300 (Mich. 1986). Because the term "review de novo" is a legal term of art, however, determining the average voter's understanding of the language would involve unrealistic speculation; consequently, we look to judicial decisions and legal commentaries to determine if there is a consensus regarding the meaning of the term. *Id.*

■ Our research indicates that most commentators and courts, including this Court, have distinguished between the terms "*hearing de novo*" or "*trial de novo*" and the term "*review de novo*." This Court directly addressed the distinction between these terms in *Chioffi v. Winooski Zoning Board*, 151 Vt. 9, 11 n.2, 556 A.2d 103, 105 n.2

---

[3] Former 13 V.S.A. § 7554 neither was inconsistent with nor offered greater procedural protections than the 1994 bail amendment. Therefore, amicus is mistaken if he is arguing that, in the absence of Act 143, the former bail statute would have somehow prevented courts from applying the new bail amendment without also considering that statute.

(1989). In that case, we defined the term "de novo trial," which is contained in 24 V.S.A. § 4472(a) to describe a zoning hearing before the superior court, as "'one where the case is heard as though no action whatever had been held prior thereto.'" *Id.* at 11, 556 A.2d at 105 (quoting *In re Poole*, 136 Vt. 242, 245, 388 A.2d 422, 424 (1978)). We explicitly noted that "'de novo review,' a procedure that might not require a retrial or extensive judicial record making, is not the standard required by the statute." *Id.* at 11 n.2, 556 A.2d at 105 n.2. Notwithstanding defendant's attempts to distinguish *Chioffi*, that case indicates that before Proposal 7 went to the voters we recognized a clear distinction between the terms "trial de novo" or "hearing de novo" and the term "review de novo."

Defendant cites several Vermont cases in support of his claim that, in Vermont jurisprudence, the term "de novo" means a completely new evidentiary hearing with no consideration of the record of any previous hearing. These cases, which may be divided into two categories, do not support defendant's claim. The first category includes cases that define the terms "de novo trial" or "de novo hearing" or that define the term "de novo" in isolation. See, e.g., *Poole*, 136 Vt. at 245, 388 A.2d at 424 (term "de novo trial" in 24 V.S.A. §§ 4472(a) and 4475 means "de novo hearing . . . where the case is heard as though no action whatever had been held prior thereto"); *In re Wheelock*, 130 Vt. 136, 140, 287 A.2d 569, 572 (1972) (de novo characteristic of de novo proceeding relates to taking of all testimony anew and disregarding initial proceeding); *In re Automobile Liability Ins. Rates*, 128 Vt. 73, 77, 258 A.2d 826, 829 (1969) (trial de novo in appellate tribunal designates trial as though no action whatever had been instituted in court below).

The second category includes cases in which this Court, in passing, used the words "review de novo" to describe a de novo hearing. In none of these cases, however, were we using those words as a term of art or were we interpreting the language of any rule, statute, or constitutional provision. See, e.g., *In re Bushey-Combs*, 160 Vt. 326, 329, 628 A.2d 541, 543 (1993) (holding that Human Services Board has authority to review de novo evidence of abuse in conducting evidentiary "fair hearing"); *Vermont Baptist Convention v. Burlington Zoning Bd.*, 159 Vt. 28, 29, 613 A.2d 710, 711 (1992) (stating that plaintiff appealed to superior court for de novo review of zoning board decision); *In re Maple Tree Place*, 156 Vt. 494, 499, 594 A.2d 404, 407 (1991) (using words "de novo review" in describing holding in *Poole*).

None of these cases suggest that there is something inherent in the term "de novo" that, irrespective of the words with which it is

associated, signifies a completely new evidentiary hearing without regard to any previous hearing. Cf. 5 V.S.A. § 1017 (allowing person aggrieved by decision of board of adjustment to petition for "de novo review" of decision based on grounds specified in petition). Indeed, the leading legal dictionary defines "de novo" as "anew" and "afresh," but defines "de novo trial" as trying a matter anew "as if it had not been heard before and as if no decision had been previously rendered." Black's Law Dictionary 392 (5th ed. 1979). Similarly, the dictionary defines "hearing de novo" as a hearing "contemplating an entire trial in same manner in which matter was originally heard and a review of previous hearing." *Id.* at 649. In contrast, although there is no definition of the term "review de novo," the word "review" is defined as a "consideration for purposes of correction." *Id.* at 1186.

■ While some courts suggest that the term *"trial* de novo" is ambiguous as to whether it demands a full evidentiary hearing without regard to any prior hearing, courts and commentators agree that the term *"review* de novo" does not require a second full-blown evidentiary hearing. See *Asevedo v. Anchorage School Dist.*, 843 P.2d 1209, 1209 (Alaska 1992) (while term "de novo trial" sometimes means "de novo review" on record, most common meaning of term contemplates new evidentiary hearing and original fact-finding); *Walker*, 391 N.W.2d at 299, 301, 308 (phrase "appeals . . . tried de novo" is ambiguous as to whether it means new hearing on previous record or new trial based on production of new evidence; however, statute providing that orders of Water Resource Commission may be "reviewed de novo" clearly contemplates review on the record rather than new evidentiary hearing); 2 C. Koch, Administrative Law and Practice § 9.3, at 88 (Supp. 1995) ("de novo judicial review" of state agency action "contemplates an independent determination based on the information compiled by the agency"); Note, *De Novo Judicial Review of Administrative Agency Factual Determinations Implicating Constitutional Rights*, 88 Colum. L. Rev. 1483, 1495 (1988) (de novo review generally does not require new evidentiary hearing).

At most, the term "review de novo" contemplates a nondeferential review that generally relies on, but is not restricted to, the record — precisely the review we have set forth in Rule 9. See *Doe v. United States*, 821 F.2d 694, 697-98 (D.C. Cir. 1987) (in statute allowing civil suits based on agency decision not to amend individual record and requiring district court to "determine the matter de novo," term "de novo" meant, "as it ordinarily does," independent determination in which court is not limited to administrative record and need not defer

to agency decision); *Frye v. Memphis State University*, 671 S.W.2d 467, 469 (Tenn. 1984) (statute providing for "de novo judicial review" of administrative decision discharging tenured faculty member of state university means new hearing in chancery court based upon administrative record and additional evidence that is relevant and not duplicative of earlier testimony).

Defendant contends, however, that the term "review de novo" has a restricted meaning only in the administrative law context as the result of constitutional constraints. Cf. *Crouch v. Police Merit Bd.*, 773 S.W.2d 461, 463 (Ky. 1988) (holding that, because of separation-of-powers constraints, statutory language giving discharged public employee right to "be tried anew" in circuit court after agency hearing did not permit appellate court judge to hear testimony and determine credibility of witnesses). The term "review de novo," however, is commonly used to describe the nondeferential on-the-record standard of review that appellate courts apply to lower court determinations regarding questions of law or mixed questions of law and fact. See *United States v. Howard*, 828 F.2d 552, 554 (9th Cir. 1987) ("We review de novo motions to suppress, probable cause, exigent circumstances and the overall lawfulness of a search."); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986) ("A claim of ineffective assistance of counsel is a mixed question of law and fact that is reviewed de novo."); *Davis v. United States*, 564 A.2d 31, 35-36 (D.C. 1989) (when matter under review is question of law or mixed question of law, appellate court applies de novo review, which allows it, based on original appraisal of record, to reach different result from trial court without deference to that court's findings).

■ Similarly, the term "de novo determination" is used to describe the independent on-the-record review that federal courts give to the recommendations of magistrates. See *United States v. Raddatz*, 447 U.S. 667, 676 (1980) (in light of statute's use of term "de novo determination" rather than term "de novo hearing," district court need not rehear contested testimony in reviewing magistrate's challenged findings or recommendations; rather, Congress intended to give court discretion on how much reliance to place on magistrate's proposed findings and recommendations); *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988) (under statute, district court must conduct de novo review of challenged magistrate finding; "use of the phrase *de novo* implies" that court's consideration of factual issue must be independent and based on record); *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) (agreeing that district court should have

reviewed magistrate's denial of bail de novo by reaching its own independent conclusion and not simply by deferring to judgment of magistrate).

The terms "de novo review" and "de novo consideration" are also used in other contexts involving one court reviewing the decision of another court or quasi-judicial body. See *In re Price-Watson Co.,* 66 B.R. 144, 149 (Bankr. S.D. Tex. 1986) (term "de novo review" in bankruptcy statute is akin to term "de novo determination" from Magistrates Act, and "does not mean 'de novo trial'"); *State ex rel. Oklahoma Bar Ass'n v. Carpenter,* 863 P.2d 1123, 1128-29 (Okla. 1993) (Oklahoma Supreme Court review of bar disciplinary proceedings is "de novo consideration," which entails disciplinary panel submitting complete record for de novo examination by court); cf. *In re Hill,* 152 Vt. 548, 555-56, 568 A.2d 361, 365 (1989) (distinguishing between review of Judicial Conduct Board recommendation in which great weight is given to Board's findings and "de novo review" in which no deference is given to original fact-finder, but not suggesting that latter standard would require complete retrial of disciplinary hearing before Supreme Court).

■ To sum up, the consensus among courts and commentators is that the term "review de novo," in contrast to the terms "hearing de novo" and "trial de novo," means that the reviewing court will reappraise the evidence in the record and reach its own independent conclusion on the matter at issue. Indeed, neither defendant nor amicus have cited, and we have not found anywhere in the country, any court decisions that hold otherwise. This type of review is quite different from, and obviously more rigorous than, the deferential treatment an appellate court ordinarily gives to a lower tribunal's fact-finding — commonly called the "clearly erroneous" standard. See V.R.C.P. 52 (trial court's findings of fact shall not be set aside unless clearly erroneous). We construe the term "review de novo" in its broadest sense by authorizing the reviewing justice to accept, upon a showing of good cause, additional evidence on the issue of whether a defendant should be denied bail.

## B. *Legislative Intent*

Despite the plain meaning of the term "review de novo," defendant and amicus argue that, by adopting Act 143, the legislature clearly intended that defendants be accorded a second full evidentiary hearing that would ignore the initial district court proceedings. We

find nothing in the legislative history of the statute sufficient to overcome the overwhelming consensus on the meaning of the term "review de novo." See *Cavanaugh v. Abbott Laboratories,* 145 Vt. 516, 530, 496 A.2d 154, 162-63 (1985) (true intent of legislature is determined through plain meaning of statutory language).

In support of their legislative-intent argument, defendant and amicus rely heavily on (1) comments made by Chief Justice Frederic W. Allen in January 1994 to the House Judiciary Committee, and (2) the reaction of the Joint Rules Committee to our amendment of Rule 9. Neither of these arguments demonstrates that the voters of Vermont or the legislature intended that defendants be provided with two full evidentiary hearings before being denied bail. Chief Justice Allen made comments before the House Judiciary Committee expressing his belief that members of the committee regarded "review de novo" as signifying a second evidentiary hearing before a justice of this Court. Two years earlier, however, the Chief Justice stated to the same committee, which was reviewing Proposal 7 after it had passed the Senate, that it was not absolutely clear what the term "review de novo" meant, and that this Court would probably have to define the term by rule. Regardless of what Chief Justice Allen said, the remarks of a witness at a committee hearing are accorded little weight in determining the intent of the legislature in enacting a statute. 2A N. Singer, Sutherland Statutory Construction § 48.10, at 343 (5th ed. 1992). Moreover, the House Committee was considering language that had been drafted in the Senate so the intent of the House Committee is not at issue. Defendant's suggestion that the Vermont voters relied on this "public exchange between the legislative branch and the judicial branch" in adopting Proposal 7 is farfetched.

Regarding the Joint Rules Committee's negative reaction to our amendment to Rule 9, legislative intent does not necessarily become apparent from the post-hoc reaction of a committee of lawmakers. *Id.* ("committee statements made after the statute has been passed cannot retroactively provide legislative history"). Defendant argues, however, that the contemporary statements of certain legislators indicated that they understood the term "de novo review" to mean a "de novo trial." None of the quoted statements denotes unequivocally the speaker's acknowledgment of what was intended by the disputed term. But even if individual legislators made comments indicating that they contemplated a second evidentiary hearing, those comments are of little weight in determining legislative intent, unless

they also exist in a written report that was available for review by the full legislature before passing the bill. *Id.* at 342 (while statements in committee report concerning purpose of proposed law are used by courts in determining legislative history, courts "are hesitant to resort to similar statements made by committee members or other persons at the committee's hearings"); see *St. Amour v. Department of Social Welfare*, 158 Vt. 77, 81, 605 A.2d 1340, 1342 (1992) (although not decisive, intent of legislature as revealed by committee *report* is highly persuasive when statute is silent on disputed issue).

■ In short, the inconclusive legislative history relied on by defendant and amicus is insufficient to overcome the plain meaning of the term "review de novo" in the bail amendment and its accompanying legislation. See *In re Killington, Ltd.*, 159 Vt. 206, 216, 616 A.2d 241, 247 (1992) (legislative history is helpful only where it clearly shows intent of legislature); *Vermont Development Credit Corp. v. Kitchel*, 149 Vt. 421, 428, 544 A.2d 1165, 1169 (1988) (testimony and statements of legislative witnesses and individual legislators, standing alone, "'have never been regarded as sufficiently compelling to justify deviation from the plain language of a statute'") (quoting *United States v. Oregon*, 366 U.S. 643, 648 (1961)).

This is not a case where the constitutional amendment or statute contained a "series of oversights," see *In re C.S.*, 158 Vt. 339, 342-43, 609 A.2d 641, 643 (1992), or was silent on the issue in dispute. See *Vermont Elec. Power Co. v. Town of Cavendish*, 158 Vt. 369, 375, 611 A.2d 389, 392 (1992) (reviewing legislative history where statute is silent on disputed point); *St. Amour*, 158 Vt. at 81, 605 A.2d at 1342 (because statute is silent on point at issue, legislative history must be examined to determine if regulation was reasonable interpretation of statute). Nor is this a case where the common understanding of the term would produce an absurd or irrational result; indeed, as indicated above, the result obtained is more reasonable than that proposed by defendant. Where there is a consensus among courts and commentators on the meaning of the disputed term, and the legislative history is inconclusive, the plain meaning of the language must prevail. See *Dykstra v. Property Valuation & Review Div.*, 156 Vt. 215, 218, 591 A.2d 63, 65 (1991) (plain meaning of statute is abandoned only in "narrow and particular circumstances").

### III. *Due Process*

■ Finally, defendant and amicus argue that this Court's interpretation of Proposal 7 violates the due process rights of defendants

by denying them two full evidentiary hearings before the bail decision is reviewed by a three-member panel of this Court. This argument is without merit, as suggested by the lack of case law to support it. In *United States v. Raddatz*, the Supreme Court rejected the argument that a federal statute violated due process by allowing district courts, in reviewing magistrates' recommendations regarding motions to suppress, to make de novo determinations of contested credibility assessments without personally hearing live testimony. 447 U.S. at 677-80. In determining whether the statute violated defendant's due process rights, the Court considered (1) the private interests implicated; (2) the public interest and administrative burdens; and (3) the risk of an erroneous determination from the process accorded, and the probable value of additional safeguards. *Id.* at 677.

An examination of these factors shows that applying the plain meaning of the term "review de novo" does not violate defendant's right to due process. Although defendant's interest in avoiding incarceration pending trial is great, it is of a lesser magnitude than an extended deprivation of freedom that would result from conviction after a criminal trial, particularly in light of the bail amendment's requirement that persons held without bail on charges for crimes not punishable by life imprisonment must be tried within sixty days after bail is denied. See Vt. Const. ch. II, § 40; cf. *Raddatz*, 447 U.S. at 700-01 (Marshall, J., dissenting) (in our criminal justice system, suppression hearings are often as important as trial itself because trial court's ruling may determine outcome of case). Further, while incarcerated, defendant has an interest in speedy resolution of the bail determination, which would be hampered by requiring a second full evidentiary hearing. The general public also has an interest in speedy resolution of bail determinations, as well as the protection of sensitive witnesses, which would be undermined by requiring two evidentiary hearings. Cf. V.R.Cr.P. 15(f) (regarding protection of deponents with sensitive testimony). As noted previously, requiring two full evidentiary hearings would also divert scarce judicial resources and interfere with administrative efficiency of the court system. For instance, if a bail hearing required days to resolve, cf. *State v. Passino*, 154 Vt. 377, 383, 577 A.2d 281, 285 (1990) (three-day bail hearing before district court), holding a new evidentiary hearing here could wreak havoc with this Court's scheduled cases.

Most importantly, there is no indication that the risk of an erroneous determination would increase if defendants were not

automatically accorded a second evidentiary bail hearing. A defendant denied bail is entitled to an evidentiary hearing before a district court judge, who, unlike a federal magistrate, is empowered to deny the prosecutor's motion to hold the defendant without bail. If the defendant is denied bail, he or she is entitled to a second hearing, in which a justice of this Court must make an *independent* bail determination. Further, if good cause is shown, the justice may require witnesses to appear and testify. A defendant who is denied bail upon a second independent examination of the facts is entitled to seek further review before a three-member panel of this Court. In short, defendants are afforded more than adequate protections to satisfy due process.

Defendant and amicus suggest that the above procedure creates an anomaly by affording less procedural safeguards to defendants who have more to lose. They argue that persons detained because of an inability to meet conditions of release are entitled to a second evidentiary hearing to have the conditions reviewed. See 13 V.S.A. § 7554(d)(1) (person for whom conditions of release are imposed and who is detained as result of inability to meet those conditions shall be entitled to have conditions reviewed at hearing). They further argue that persons held without bail under 13 V.S.A. § 7553 — those who have committed crimes punishable by life imprisonment — can appeal denial of bail only to a three-member panel of this Court. We find no merit in this argument.

■■ ■■  First, with respect to defendant's § 7554 argument, nothing in that statute entitles defendants to a full hearing at the time conditions of release are first imposed; thus, for all practical purposes, defendants are entitled to only one full hearing to challenge conditions of release that have been previously set by a judicial officer.[4] Second, the issue is not how many procedural protections one category of persons has compared to another, but rather whether the procedural safeguards afforded to a defendant satisfy due process standards. Third, it is not anomalous for the legislature to afford less procedural protection with respect to denial of bail to persons accused of serious crimes that, by their very nature, would pose some danger to the public if the persons were released pending trial. Cf. *Passino*, 154 Vt. at 382, 577 A.2d at 284-85 (right-to-bail exception as applied to those charged with crimes punishable by life imprisonment "responds

---

[4]  We note that there is no need to decide in this opinion the scope of the hearing before the district court or a justice of this Court.

to concerns about the risk of flight and the dangerousness of persons charged with very serious offenses"). The bail determination is not a conviction and does not result in incarceration concomitant to the crime committed.

## IV. *Conclusion*

We have interpreted the bail amendment and its accompanying statute according to the plain meaning of their language. The legislative history cited by defendant and amicus is inconclusive as to what the people of Vermont and the legislature intended when they adopted Proposal 7 and passed the accompanying bail statute. We recognize that Proposal 7 and Act 143 are an accommodation of competing goals — to protect the people of Vermont and victims of crime and, at the same time, to assure that defendants held without bail are afforded sufficient procedural safeguards. Applying the term "review de novo" according to its plain meaning does not undermine the latter goal. The additional full-blown evidentiary hearing that defendant claims is accorded by the bail amendment might give defendants tactical advantages in certain cases, but would not, in any significant way, lower the risk of an erroneous bail determination. Further, a second evidentiary hearing would delay bail determinations and sap vital judicial resources without providing defendants any significant procedural safeguards. Despite the apparent belief among some legislators that two evidentiary hearings are necessary to protect defendants and were intended by the language of Proposal 7 and Act 143, we cannot conclude, given the plain meaning of the term "de novo review," that the people of Vermont or the full legislature intended to adopt such a procedure.

*The question posed by defendant's challenge — whether the term "review de novo," as set forth in Chapter II, § 40 of the Vermont Constitution and in 13 V.S.A. § 7556(d), requires a single justice of this Court to hold a second bail hearing without considering the record created in the initial bail hearing before the district court — is answered in the negative.*