STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
| --- | --- | --- |
| In re: Marsh Zoning Permit | } | Docket No. 135-7-08 Vtec[1] |
| (Appeal of Efthim) | } | |
|  | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellants William and Roberta Efthim, James and Dorothy Field, Burton and Margaret McGillivray, William and Lisa Pezzoni, and Louis and Rosemarie Scibetta appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Hartford, denying their appeal of the Zoning Administrator's issuance of a zoning permit to Appellee-Applicant Blanche Marsh. Appellants are represented by Steven R. Saunders, Esq.; Appellee-Applicant (Applicant) is represented by Elizabeth K. Rattigan, Esq.; and the Town is represented by William F. Ellis, Esq.

On March 17, 2009, the Court dismissed Questions 2 and 7 of the Revised Statement of Questions, and partially dismissed Questions 1 and 4 as they related to the Quechee Declaration of Covenants. In re: Marsh Zoning Permit, No. 135-7-08 Vtec (Vt. Envtl. Ct. Mar. 17, 2009) (Wright, J.). In subsequent pretrial conferences, the parties agreed that the remaining issues in the appeal could be resolved by cross-motions for summary judgment on all remaining questions.[2] The following facts are undisputed

---

[1] Please note that the correct docket number for this appeal is 135-7-08 Vtec, not the 2007 docket number that appears on some of the documents filed in this matter.

[2] When presented with cross-motions for summary judgment, the Court considers each motion independently and "afford[s] all reasonable doubts and inferences to the party opposing the particular motion under consideration." In re Chimney Ridge Road Merged Parcels, No. 208-9-08 Vtec, slip op. at 2 (Vt. Envtl. Ct. July 31, 2009) (Durkin, J.) (citing DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609).

unless otherwise noted.

In 1971 Applicant acquired parcel F-20 located at 600 Hillside Road in the Quechee Lakes Planned Development in the Town of Hartford. The Quechee Lakes Planned Development, which comprises over 5500 acres of land, received municipal approval under § 4-3 of the Town of Hartford Zoning Regulations (Zoning Regulations), including municipal approval of the Quechee Lakes Master Plan in 1971 and in 1988. The Quechee Lakes Master Plan (Master Plan) describes, among other things, the uses allowed in the various areas of the development and any area and dimensional standards or other land use standards that deviate from the bylaw requirements that are otherwise applicable to the area. See Zoning Regulations § 6-2 (defining "Planned Unit Development"); § 4-3 (Planning Commission may waive or vary certain regulations when approving a "Planned Development").

The Master Plan is an overall guide to the development of land within the Quechee Lakes Planned Development, and all land within the development is subject to the Master Plan, in addition to the Zoning Regulations. In that respect, the Master Plan functions in the same way as an overlay zoning district. Because it embodies whatever changes to the otherwise-applicable Zoning Regulations have already been approved for the Quechee Lakes Planned Development, the Master Plan provisions control over any conflicting Zoning Regulations.

Much of the land in the Quechee Lakes Planned Development is also subject to the "Declaration of Covenants, Rights and Benefits Pertaining to the Quechee Lakes Subdivision" (Declaration of Covenants), which governs certain private property rights between landowners. However, although the Declaration of Covenants may be incorporated into a property owner's deed of conveyance, the Declaration of Covenants has not been incorporated into the Master Plan and has not itself received municipal approval in connection with approval of the Planned Development.

Applicant's property is a so-called Farmstead parcel. Under the Master Plan, a

2

Farmstead parcel is defined as a "single[-]family parcel consisting of 2 lots and containing not less than a total of 4 acres. Each lot is considered one unit for Master Plan calculations." Master Plan § 3-3J. In 1971, Applicant's Farmstead parcel consisted of a 5.67-acre L-shaped lot and a one-acre so-called "salable" lot. In 1973, Applicant received a zoning permit and constructed a single-family dwelling within the area of the one-acre salable lot.

In 1984, the Planning Commission approved the resubdivision of Applicant's Farmstead parcel into two equal-sized lots, each consisting of approximately 3.3 acres. That approval was not appealed and cannot now be contested, either directly or indirectly. 24 V.S.A. §4472(d).[3] As of the 1984 resubdivision, Lot 11-1074A-000 (Lot A) contained the existing single-family dwelling built in 1973, and Lot 11-1074B-000 (Lot B) was undeveloped. Lot A has road frontage; Lot B has access to the road by a right-of-way over Lot B.

In 1985 and 1986, Applicant further developed Lot A with a detached accessory garage structure, having a dwelling unit (guest quarters)[4] on its upper floor. The garage received a zoning permit in 1985; the guest quarters in the second story of the garage received a zoning permit in 1986. Neither of those permits was appealed; neither permit can now be contested, either directly or indirectly. 24 V.S.A. §4472(d). The 1986 zoning permit for the guest quarters authorized the construction of a "dwelling unit in [the] upper level of [the] garage (guest house)." Zoning Permit # 4819 (Jan. 30, 1986). The use of the term "guest house" in parentheses in the 1986 zoning permit cannot now

---

[3]   See also, e.g., <u>Town of Charlotte v. Richmond</u>, 158 Vt. 354, 356 (1992) ("[I]n the absence of an appeal, all parties are bound by local zoning decisions and shall not thereafter contest, either directly or indirectly, such decision or act." (internal quotations omitted)).

[4]   This decision uses the term "guest quarters" as a term that does not appear in any plan or regulations to refer to the dwelling unit in the garage.

be contested, either directly or indirectly.  24 V.S.A. § 4472(d).

After this dwelling unit was constructed in the second story of the garage structure, Lot A contained a single-family dwelling and an accessory detached garage with a dwelling unit on its upper floor.  Lot B remained undeveloped.

Applicant now proposes to construct a single-family residence, with attached garage and deck, on the undeveloped Lot B; her application for this zoning permit (#2008-052) is the subject of the present appeal.  As stated in the March 17, 2009 decision, all that is before the Court in this case "is whether the new house proposed for Lot B is allowed under the zoning ordinance and under any municipal approvals of the Quechee Lakes Planned Development."  In re: Marsh Zoning Permit, No. 135-7-08 Vtec, slip op. at 4.  Appellants argue that the existence of the dwelling unit in the second floor of the garage on Lot A should preclude the issuance of a zoning permit for a single-family dwelling on Lot B.

Master Plan Article VIII, References, states that Article VIII "is meant to include exhibits of all relevant or associated documents that may serve as references" in interpreting the Plan.[5]  Article VIII of the Master Plan further establishes that, "[i]n case of a conflict between the Master Plan and any other document, the Master Plan shall be the conclusive authority," except for the provisions of a specified open space agreement which governs over inadvertent conflict with provisions of the Master Plan.  Article VIII provides a process by which any "inadvert[e]nt errors or omissions to the specific

---

[5]  Although no actual list of exhibits has been provided to the Court as having been attached to the original Article VIII of the Master Plan, the Court has treated the Declaration of Covenants as one of the "relevant or associated documents that may serve as references."  By contrast, the Court has not considered the 2006 Hershenson letter, as it was written long after the Master Plan was drafted.  Even statements of legislators made after a statute has been passed "cannot retroactively provide legislative history." State v. Madison, 163 Vt. 360, 373 (1995) (quoting 2A N. Singer, Sutherland Statutory Construction § 48.10, at 343 (5th ed. 1992)).

4

provisions" of the Master Plan that can be "corroborated" by reference to other "relevant or associated documents," may be "incorporated as amendments" to the Master Plan without the payment of an additional application fee. That is, inadvertent errors in the Master Plan may be corrected by applying to the Planning Commission to amend the Master Plan. No provision of the Declaration of Covenants relating to guest houses has been incorporated as an amendment to the Master Plan.

In addition, "[e]xcept as otherwise modified [in the Master Plan,] all definitions of terms as contained in the Town of Hartford Zoning Regulations are incorporated" into the Master Plan. Master Plan § 3-3E; see Zoning Regulations § 6-2.

The Master Plan defines a Farmstead parcel as a "single[-]family parcel consisting of 2 lots and containing not less than a total of 4 acres." Master Plan § 3-3J. "Farmsteads and woodsteads may have a barn," unlike other single-family lots. Master Plan § 4-2B.[6] Except for provisions regarding the calculation of the number of authorized dwelling units in the development,[7] no other provisions in the Master Plan specifically relate to the development of Farmstead parcels as distinct from other single-family lots.

None of the applicable provisions of the Master Plan specifically limits the number of accessory structures allowed on a Farmstead parcel, or on any single-family lot. The otherwise-applicable section § 3-2.3 of the Zoning Regulation limits the number to three detached structures in the Residential and the Rural Lands zoning districts.

_____

[6] The Declaration of Covenants also allows Farmstead and Woodstead parcels to have a barn. Declaration of Covenants § II(a).

[7] Generally, each of the two lots within a Farmstead parcel "is considered one unit for Master Plan calculations." Master Plan § 3-3J. However, under Master Plan §§ 3-1B and 3-1C, "[a]ny additional units resulting from development of farmstead second lots" are exempt from the calculation of the "total authorized number of dwelling units" in the development, based on "a ratio of one dwelling unit per 2.4 acres" or a total of 2154 dwelling units.

Master Plan § 4-2B allows a range of accessory structures to be constructed as accessory to a single-family dwelling on any size lot, including garages (of no more than three-car capacity), storage buildings, boat sheds, decks, porches, playhouses, and "other customary accessory structures."[8] The only accessory structure that is further limited by Master Plan § 4-2B is that of a "guest house," which is limited to 20 feet in height and may only be constructed on "lots which contain two acres or more."[9] The concept of a guest house dwelling unit is one that is a non-rental unit, intended for use by the owner's family and friends. Master Plan § 3-3L. The Master Plan does not otherwise regulate accessory uses (as opposed to accessory structures), such as home occupations, guest quarters, or accessory dwelling units, carried on within an allowed primary or accessory structure.[10]

The Master Plan regulates single-family dwellings on individual or "subdivided" lots, Master Plan § 4-2, requiring a minimum lot size of one-acre for "newly subdivided single family lots." As a Farmstead parcel contains two lots, two separate single-family dwellings may be constructed on a Farmstead parcel, one on each lot contained in the parcel, regardless of the number of other structures that may be built as accessory to each of those single-family dwellings.

---

[8] The Declaration of Covenants also allows a landowner to construct a single-family dwelling, an accessory garage, and "other customary accessory structures." See Declaration of Covenants § II(a).

[9] The Declaration of Covenants excludes "Farmsteads and Woodsteads which are provided with separate buildable parcels" from the provision that "lots which contain two acres or more may have a guest house." Declaration of Covenants § II(a).

[10] By contrast, for example, both the state statute and the Zoning Regulations preserve the right to conduct a home occupation, 24 V.S.A. § 4412(4) ("Protection of Home Occupations"); Zoning Regulations § 3-11 (permitting "home occupations . . . in all districts upon issuance of a zoning permit"), while § II(b) of the Declaration of Covenants provides that "no trade, business or commercial activity [of] any nature shall be conducted . . . ."

Applicant's Farmstead parcel is made up of two separate single-family lots, each now consisting of approximately 3.3 acres. Under the Master Plan and the Zoning Regulations, Applicant is entitled to construct one single-family dwelling on each lot. In addition, under Master Plan § 4-2B, Applicant is also entitled to have as accessory to each single-family dwelling "a garage . . . and other accessory structures" including "decks . . . and other customary accessory structures." Therefore, regardless of whether the accessory structure on Lot A is in any way a nonconforming structure or contains a nonconforming use, the proposed single-family dwelling on Lot B, together with its attached accessory garage and deck, complies with the Master Plan and the Zoning Regulations.

Appellants argue that the dwelling unit constructed within the garage on Lot A in 1986 should be counted as the second single-family dwelling allowed on Applicant's two-lot Farmstead parcel, and that therefore the single-family dwelling now proposed for Lot B should be counted as an impermissible third single-family dwelling on the overall Farmstead parcel. Appellants do not challenge either the construction of a single-family dwelling on Lot A or the construction of a detached garage as an accessory structure on Lot A. Rather, they argue that the construction of a dwelling unit within the garage was not authorized as a "guest house," and did not meet the definition of "accessory dwelling unit" under the Zoning Regulations and 24 V.S.A. § 4412(1)(E).[11]

First, the exclusion of Farmstead lots from having a guest house is only found in the Declaration of Covenants and was never incorporated as an amendment to the Master Plan through the procedure provided in Article VIII of the Master Plan. Therefore, the Master Plan's provision allowing guest houses on lots of two acres or

---

[11]   The parties have not provided the provisions of the zoning ordinance or state statute in effect in 1986 as to accessory dwelling units, if any.

more, regardless of whether the lots were originally part of a Farmstead parcel, governs with regard to the present zoning application over any conflicting provision in the Declaration of Covenants.

Second, a "guest house" is defined in the Master Plan as a "non-rental accessory <u>structure</u> intended for occupancy by family and friends" (emphasis added); such a structure must be less than 20 feet in height. Master Plan §§ 3-3L, 4.2B. By contrast, the height of a garage accessory structure is only regulated by § 3-2.1 of the Zoning Regulations. The installation of the guest quarters was not approved as a new accessory structure, despite the reference to "guest house" in parentheses in the Zoning Permit, as the garage structure had been approved in its own permit the year before. Rather, it was approved as a new guest dwelling unit in the garage accessory structure.

Appellants argue that the guest quarters is too large to qualify as an "accessory dwelling unit" as that term is defined in § 6-2 of the current Zoning Regulations and as provided in 24 V.S.A. § 4412(1)(E). The state statute provides protection for certain small accessory dwelling units to be treated as permitted uses in zoning ordinances, it does not require municipalities to exclude larger accessory dwelling units. Rather, 24 V.S.A. § 4412(1)(F)(i) specifically provides that nothing in § 4412(1)(E) "shall be construed to prohibit . . . a bylaw that is less restrictive of accessory dwelling units."

In any event, nothing has been presented to the Court to show that the accessory dwelling unit approved for the upper floor of the garage did not meet the requirements of the Zoning Regulations or the state statute in effect in 1986 when it was approved. Even if the accessory guest dwelling unit in the second floor of the Lot A garage did not comply with the applicable Zoning Regulations and Master Plan provisions at the time that it was constructed, the permit authorizing the accessory guest dwelling unit became final and cannot now be challenged. 24 V.S.A. §4472(d). See <u>City of S. Burlington v. Dep't of Corrections</u>, 171 Vt. 587, 589 (2000) (stating that even where the municipal action was "void at the time it was made" or "ultra vires," § 4472 bars a

challenge to a final permit); <u>Phillips Constr. Servs., Inc. v. Town of Ferrisburg</u>, 154 Vt. 483, 485 (1990) ("[E]ven where the board's ruling is ultra vires, 24 V.S.A. § 4472(d) unequivocally forecloses a challenge to that ruling, absent a timely, direct appeal."); <u>Levy v. Town of St. Albans Zoning Bd. of Adjustment</u>, 152 Vt. 139, 143 (1989).

If the accessory guest dwelling unit did not comply or has become nonconforming, it is an existing nonconforming use in a conforming accessory garage structure. 24 V.S.A. § 4303(15) ("nonconforming use" includes a use "improperly authorized as a result of error by the administrative officer"). Even such a nonconformity on Lot A would have no effect on whether Applicant's proposal for Lot B should be approved. Applicant's proposal to build a single-family dwelling, with an accessory garage and deck, on an undeveloped 3.3-acre lot that was originally part of a two-lot Farmstead parcel, meets the requirements of the Zoning Regulations and the Master Plan for approval, regardless of any nonconformities that may or may not exist on Lot A.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Applicant's Motion for Summary Judgment is GRANTED, and Appellants' Motion for Summary Judgment is DENIED on all remaining questions in the Revised Statement of Questions, concluding this appeal. On or before November 19, 2009, Applicant shall file a proposed judgment order.

Done at Berlin, Vermont, this 9th day of November, 2009.

_____
Merideth Wright
Environmental Judge

9