**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

| | | |
|---|---|---|
| | } | |
| In re Godnick Family Trust | } | Docket No. 52-4-09 Vtec |
| Permit & Variance Application | } | |
| | } | |

## Decision on Motion for Summary Judgment

The Gilbert G. Godnick Marital Trust (the "Trust") owns property along U.S. Route 7 in the City of Rutland ("City") on which the Godnick's Grand Furniture Store is operated. When the City of Rutland Development Review Board ("DRB") granted the Trust's application for a variance to demolish three residential structures at 3–5 Field Avenue and to construct a commercial addition to its existing building, together with a related parking area and landscaping, the only appeal[1] presented to this Court was that of the Trust, which appealed the DRB's rejection of two requests to modify the conditions attached to the variance. The Trust is represented in these proceedings by James P.W. Goss, Esq.

A number of neighbors entered their individual appearances in this appeal, including Richard and Linda Sgorbati, Karen Barber, Marjory Perkins, James Abatiell, J.C. and Valerie Biebuyck, and five members of the Hathaway family.[2] Each of the neighbors appears pro se. However, since the appeal's commencement, several neighbors have either withdrawn or declined to further participate. The only neighbors remaining in this proceeding include members of the Biebuyck and Hathaway families.

The City has also entered an appearance in this appeal through its attorney, Andrew G. Costello, Esq.

The parties have undertaken significant efforts to negotiate acceptable modifications to the conditions attached to the variance, ultimately reaching an agreement acceptable to the remaining parties. The Trust has presented the terms of this agreement in its motion for summary judgment, which is not opposed by the City, the Biebuycks, or the Hathaways. It is the propriety of these proposed modifications to the variance conditions that is the subject of this Decision.

---

[1] No party to the DRB proceeding appealed the DRB's granting of the Trust's variance request.

[2] The Hathaways also requested leave from the Court to intervene in the Trust's appeal, pursuant to 24 V.S.A. § 4471(c). See also 10 V.S.A. § 8504(n). Their request for intervenor status was granted on May 18, 2009.

1

**Factual & Procedural Background**

For the sole purpose of putting the pending motion into context, we recite the following facts, which we understand to be undisputed:

1.      The Trust owns two adjoining properties at the northwest corner of the intersection of North Main Street[3] and Field Avenue in the City.  At 259 North Main Street, the Trust owns and operates the Godnick's Grand Furniture Store ("Store").  Directly adjacent the Store, at 3–5 Field Avenue, the Trust owns a smaller residential lot that hosts three small houses and a commercial parking area.

2.      The eastern and northern property lines of the Field Avenue property abut the outer walls of the Store.  The western property line abuts another residential property, owned and occupied by Mr. and Mrs. Biebuyck; the southern boundary fronts Field Avenue.  The Field Avenue property is in the Single Family Residential Zoning District ("SFR District").

3.      The Trust wishes to expand the commercial building in which the Store operates.  To do so, it sought authority to demolish the three rental houses at 3–5 Field Avenue and to construct an addition to the Store building that would extend onto a portion of the 3–5 Field Avenue property.  The site improvements would also include a parking area, landscaping, and earthen berms to provide screening and protection for adjoining neighbors.

4.      In October of 2008, the Trust submitted a permit application to the City of Rutland Zoning Administrator ("Administrator"), seeking permission to begin the proposed demolition and construction project on the Field Avenue property.

5.      The Trust indicated that the improvements would be used as a commercial building and commercial parking area, but did not specify their precise commercial uses.  Potential uses identified in the application included general business use, professional offices, retail use or accessory space to retail use, or self-storage units.

6.      The Trust offered some details for its proposed project, including that the construction would consist of a long, narrow addition to the section of the Store that abuts the northern property line of 3–5 Field Avenue.  The 100-foot by 33-foot addition would be situated on the western portion of the lot, perpendicular to Field Avenue.  Once completed, this addition to the Godnick Store building would surround the remaining parking lot on 3–5 Field Avenue.  As a general reference, we have attached to this Decision a copy of the Trust's hand-drawn site plan,

---

[3]  North Main Street is also known as U.S. Route 7.

revised as of January 13, 2009, and marked as Exhibit A. We note that this site plan is not drawn to scale.

7. The easterly side of the new addition, facing the interior of the remaining parking area, would be about nineteen feet high; the roof would then slope down in a westerly direction, so that the westerly side of the addition, which would run parallel to the property line shared with the Biebuycks, would be about ten feet high.

8. The Trust proposed to screen this building addition from westerly neighbors (the Biebuycks) by constructing a four-foot-high earthen berm along the western property line, which would extend 100 feet along the western boundary and parallel to the addition. Eighteen hemlock trees would be planted atop this berm. The addition would also be partially screened from residences across Field Avenue by four flowering trees that spanned the shorter, thirty-three-foot side of the addition.

9. The Administrator initially denied the Trust's zoning permit application and referred the proposal to the DRB for variance review because it contemplated a commercial use in the SFR District. On November 19, 2008, the Trust submitted a variance application to the DRB.

10. The DRB held a public hearing on the application on December 17, 2008. In response to concerns raised during the hearing, the Trust modified its project to include conditions regarding storm drainage, snow removal, lighting, and noise. After further discussions with the neighbors, the Trust also agreed to increase the amount of tree plantings for screening along Field Avenue. The Trust proposed to replace the four flowering trees with six-foot-tall hemlock trees in addition to extending the coverage area to a total of fifty-five feet, twenty-two feet beyond the southeastern corner of the addition. The Trust submitted this final proposal to the DRB on January 14, 2009. See attached Exhibit A.

11. On February 27, 2009, the DRB granted the Trust a variance for the project, subject to ten conditions. No party appealed the granting of a variance.

12. The DRB was then presented with motions to alter Conditions #1 and #3 included in the DRB's variance approval.[4] The Trust represented that the modification requests would better reflect the project revisions contained in its January 14 proposal. The DRB denied both of these

---

[4] The Trust asked the DRB to modify Condition #1, while neighbors requested the DRB modify Condition #3. Following the neighbors' request, the Trust notified the DRB that it also supported the modification of Condition #3.

requests, citing a lack of new information as justification for its decision. The Trust appealed the DRB's refusal to modify these conditions to this Court on April 6, 2009.

13. Numerous neighbors entered appearances in this appeal: J.C. and Valerie Biebuyck, the abutting neighbors directly to the west of the proposed addition; Karen Barber, a tenant at one of the Trust's rental houses; Marjory Perkins and James Abatiell, who each own residential property in the vicinity of the project on Phillips Street; Richard and Linda Sgorbati, who own a car wash on the opposite corner of North Main Street and Field Avenue; and five members of the Hathaway family, who have owned a residence in the area for approximately sixty years.

14. As is customary in appeals to this Court, the parties were ordered to participate in mediation after the initial pretrial conference. Shortly thereafter, a number of neighbors withdrew from the appeal for various reasons.

15. On July 1, 2009, Richard and Linda Sgorbati notified the Court that they were not interested in continuing the mediation. The Sgorbatis realized that it made no difference to them whether or not the conditions were modified. By July 8, Marjory Perkins and Karen Barber had also filed notice of their withdrawal from the appeal. They did not elaborate on their reasons for doing so.

16. On July 13, 2009, Mr. Abatiell filed with the Court a letter expressing frustration with the process. Although Mr. Abatiell continued to express an interest in the outcome of the appeal, it appears from his letter that he was no longer interested in participating. Since this filing, Mr. Abatiell has not contacted the Court or the Trust's attorney. In fact, the Trust's attorney wrote to Mr. Abatiell on August 10, 2009, inquiring about his continued participation in the appeal; Mr. Abatiell did not return the enclosed self-addressed, stamped envelope. We regard Mr. Abatiell's lack of response, coupled with his letter to the Court, as an indication that he has withdrawn from this appeal.

17. Despite withdrawal by the other neighbors, the Trust continued to negotiate with the remaining parties—the Hathaways, the Biebuycks, and the City—eventually reaching an agreement over the proposed modifications to the two challenged variance conditions. The Trust has submitted that agreement in support of its pending motion for summary judgment.

4

**Discussion**

The Trust asks by its pending motion that the Court summarily modify the two variance conditions challenged in this appeal.[5] Specifically, the Trust requests that Conditions #1 and #3 be modified to better reflect the final proposal submitted to the DRB. In addition, the Trust seeks the imposition of two additional conditions that have resulted from the parties' continued efforts to negotiate an acceptable project design. These efforts have secured the approval of all the parties remaining in this appeal; the City, the Hathaways, and the Biebuycks each support all of the proposed conditions in the Trust's pending motion.

Even though the Trust's motion is unopposed, "we must review the material facts and may only grant [the] motion if we determine that the applicable law directs that [the Trust is] entitled to judgment." In re Outdoors in Motion, Inc., Act 250 Amendment, No. 208-9-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Dec. 26, 2006) (Durkin, J.) (citing In re Jolley Assocs., 2006 VT 132, ¶ 9, 181 Vt. 190). Even when a motion is unopposed, summary judgment is only appropriate where "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). Facts are viewed in a light most favorable to the nonmoving party. Madkour v. Zoltak, 2007 VT 14, ¶ 12, 181 Vt. 347. We review each of the conditions proposed in the Trust's motion in this light.

In this de novo hearing, we are directed to hear the evidence anew "as if it had not been heard before and as if no decision had been previously rendered." State v. Madison, 163 Vt. 360, 370 (1985); see also Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989). Our authority to grant relief "is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader." In re Torres, 154 Vt. 233, 235–36 (1990). We are instructed to apply "the substantive standards that were applicable before the tribunal appealed from." 10 V.S.A. § 8504(h). As a result, we must consider the propriety of the Trust's proposed modification to the variance conditions in the same manner and with the same authority as the DRB enjoyed when the Trust's modification request was first presented to the DRB.

---

[5] We note here that the issue on appeal is a narrow one: the propriety of the two challenged conditions. The variance has not been challenged in this appeal. As we have repeatedly stated, this Court is one of limited jurisdiction; we are only authorized to address legal issues preserved for our review in an appeal of the specific municipal determination made below. 10 V.S.A. § 8504(h); In re Torres, 154 Vt. 233, 235 (1990). The DRB's February 27, 2009 decision granting the Trust a variance is a final, unappealed decision that cannot now be challenged, "directly or indirectly," in this or any subsequent proceeding. 24 V.S.A. § 4472.

According to the City of Rutland Zoning Bylaws ("Bylaws"), all "applications for variance shall be filed as prescribed by the Vermont Statutes." Bylaws § 31-206. The statutes, in turn, explain that the DRB in the first instance, or this Court on appeal, "may attach such conditions to variances as it may consider necessary and appropriate under the circumstances to implement the purposes of this chapter and the plan of the municipality then in effect." 24 V.S.A. § 4469(c). The propriety of the Trust's proposed modifications therefore turns on whether the conditions are necessary and appropriate under the circumstances.

The Trust first requests that we summarily modify Condition #1, which currently states that the "[p]roposed addition and parking shall only be used accessory to Applicants' Godnick's Grand Furniture Business." City of Rutland Development Review Board, Decision on Gilbert G. Godnick Family Marital Trust Property, at 5 (Feb. 27, 2009). According to the Trust, the current language prohibits use of the addition and related parking lot by anyone other than the Store, including potential successors in interest. This reading of the language chosen by the DRB for Condition #1 has some merit; we share the Trust's concern that the language, if left unchanged, may lead to confusion about the propriety of the lawful use of the addition by successors in interest to the Trust.

The Trust suggests that this condition be revised to state that "[t]he Proposed addition and parking area shall be used as described in Applicant Godnicks' zoning permit application." But we fear that this suggested language may also lead to confusion and ambiguity as to the parameters of the lawful use of the property, since a reader is required to locate the use description in the multitude of pages presented in the Trust's application. We conclude that more specific language, based upon the spirit of the parties' suggested modification, is needed and therefore quote the specific use limitations contained in the Trust's application. We therefore conclude that, in order to bring clarity to the DRB's variance Condition #1, the modified language should read as follows:

> Use of the new addition shall be restricted to general business use, professional offices, retail use or accessory space to retail use, or self-storage units. Access to any self-storage units in the addition shall be limited to the hours of 7:00 AM to 7:00 PM and such hours shall be posted in a visible location on the addition.
>
> The following uses of the addition are specifically prohibited, so as to minimize the potential for attracting groups of people generating excessive noise, activity and vehicular or pedestrian traffic: restaurants or retail food service establishments, businesses with drive-up or drive-through windows, liquor stores,

adult stores, tattoo parlors, temporary lodging establishments, or similar uses that may attract groups of people generating excessive noise, activity, or traffic.

Neither the City nor the remaining neighbors oppose the new language of Condition #1. Moreover, using language in Condition #1 that specifically relies upon the language from the Trust's application more accurately reflects the intended use of the proposed addition for which the DRB granted a variance. Our review of the material facts in the record leads us to conclude that the language suggested above for the modified Condition #1 is the only appropriate language under the circumstances. We therefore **GRANT** the Trust summary judgment with regard to Condition #1.

The Trust also requests that the Court modify the 4th sentence of Condition #3, which currently states: "As part of construction of the berm, Applicant shall further plant seven, 5 to 6 foot tall hemlock trees along the south side of the new addition." Id. The new 4th and 5th sentence of Condition #3 would read:

As part of construction of the berm, Applicant shall further plant seven, 5 to 6 foot tall hemlock trees along the south side of the new addition, equally spaced, to a point extending 18 feet beyond the southeastern corner of the new addition. Applicant shall guarantee that all hemlocks initially planted as part of this Condition shall survive for at least three years from the date of their planting.

This new language addresses specific concerns raised by neighbors during the public hearing and more accurately reflects the proposal submitted on January 14, 2009, following additional discussions with the neighbors. Not only would the modified Condition #3 provide increased screening to neighbors across Field Avenue, but it would also ensure the long-term viability of the plantings. Ultimately, modified Condition #3 helps minimize the project's impact on the residential neighborhood and brings certainty to the Trust's obligation, and that of its successors and assigns to guarantee that the planted trees mature.

When reviewing the facts in a light most favorable to the non-moving parties (none of whom oppose the suggested modification), we conclude that the modification of Condition #3 is also necessary and appropriate. We therefore **GRANT** the Trust summary judgment with regard to Condition #3.

Finally, the Trust has requested in its pending motion that two conditions be added to the variance: Condition #11 would specify that "[a]ll plantings required under this Variance as modified by this Court shall be maintained in a healthy and viable condition"; and Condition #12

7

would state that "[t]he parking lot serving the Project shall be paved." It appears that these two conditions may have been included in the Trust's proposal in order to garner support from the remaining parties. Their inclusion was a result of the parties' extensive negations and may have helped alleviate some of the neighbors' concerns.

Our review of the Bylaws does not give us reason to deny the Trust's request to include these two conditions, both of which impose additional obligations upon the Trust, in consideration of approval for its proposed addition. Nothing in the Bylaws prohibits them, and with all remaining parties supporting the proposal, including the City, we must conclude that the conditions are permissible and appropriate. We therefore **GRANT** the Trust summary judgment regarding its request to attach to its variance additional Conditions #11 and #12.

### Conclusion

For all the reasons more fully discussed above, we hereby **GRANT** the Trust summary judgment with regard on all issues raised in its appeal and hereby modify the conditions attached to the Trust's zoning permit and variance to expand Godnick's Grand Furniture Store building with an attached addition to be constructed at 3–5 Field Avenue, together with a related parking area and revised landscaping. These modifications are as follows:

A.      Condition #1 is replaced in its entirety with the following language:

Use of the new addition shall be restricted to general business use, professional offices, retail use or accessory space to retail use, or self-storage units. Access to any self-storage units in the addition shall be limited to the hours of 7:00 AM to 7:00 PM and such hours shall be posted in a visible location on the addition.

The following uses of the addition are specifically prohibited, so as to minimize the potential for attracting groups of people generating excessive noise, activity and vehicular or pedestrian traffic: restaurants or retail food service establishments, businesses with drive-up or drive-through windows, liquor stores, adult stores, tattoo parlors, temporary lodging establishments, or similar uses that may attract groups of people generating excessive noise, activity, or traffic.

B.      Condition #3 is modified in part to state:

As part of construction of the berm, Applicant shall further plant seven, 5 to 6 foot tall hemlock trees along the south side of the new addition, equally spaced, to a point extending 18 feet beyond the southeastern corner of the new addition. Applicant shall guarantee that all hemlocks initially planted as part of this Condition shall survive for at least three years from the date of their planting.

8

This provision will replace the sentence that previously stated: "As part of construction of the berm, Applicant shall further plant seven, 5 to 6 foot tall hemlock trees along the south side of the new addition."

C.     Condition #11 is added to state: "All plantings required under this variance shall be maintained in a healthy and viable condition."

D.     Condition #12 is added to state: "The parking lot serving the Project shall be paved."

A Judgment Order accompanies this Decision. This proceeding is remanded to the City of Rutland Zoning Administrator for the limited purpose of completing the ministerial act of issuing all applicable permits in accordance with this Decision and the unappealed provisions of the February 27, 2009 Decision of the City of Rutland Development Review Board. This concludes the proceedings before this Court in this appeal.

Done at Newfane, Vermont, this 6th day of January 2010.


_____
Thomas S. Durkin, Environmental Judge