**In re Automobile Liability Insurance Rates Filed by the National Bureau of Casualty Underwriters, Effective January 4, 1967**

[258 A.2d 826]

No. 1942

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**
Opinion Filed October 7, 1969

Motion for Reargument Denied November 4, 1969

74

*Ryan, Smith & Carbine,* Rutland, for National Bureau of Casualty Underwriters, Appellee.

*Robert A. Bloomer, pro se.*

**Smith, J.** The National Bureau of Casualty Underwriters, hereafter called the Bureau, is a voluntary, non-profit, unincorporated association of stock insurance companies writing casualty insurance, which acts as an insurance rating organization under Vermont rating laws for different kinds of casualty insurance, including auto liability insurance. On December 2, 1966 the Bureau, under the provisions of 8 V.S.A. Sec. 4654, submitted to the Commissioner of Insurance a proposed revision in automobile liability insurance rates, with an effective date of January 4, 1967. The new rates contained a 20 per cent increase for that part of the state designated as the Rutland territory.

Robert A. Bloomer, Esq., the appellant here, a resident of the Rutland territory and a policyholder in an insurance company associated with the Bureau, entered his protest with the commissioner against the proposed rate revision. In accordance with 8 V.S.A. Sec. 4660, a public hearing was held before the commissioner on April 19, 1967, in the City of Rutland. Subsequently, by written opinon filed May 31, 1967, the commissioner refused to set the proposed rates aside, which amounted to an approval of the rates under the section of the statute just cited.

The appellant, Mr. Bloomer, took an appeal from the decision of the commissioner to the Washington County Court of

Chancery. The Bureau, in a motion dated February 8, 1968, requested "the Chancellor rule that the hearing before the Honorable Court shall be on the appeal record and the weight of evidence produced before the Commissioner of Insurance and not *de novo*." In a hearing on this motion, the appellant, in response to an argument made by the Bureau's counsel, stated ". . . so I would disagree with Mr. Carbine and expect that when the hearing is finally held, which we hope will be soon, that the hearing will be *de novo* and the court will consider the new evidence produced and the appeal record, in accordance with the statute and its meaning." In part of his reply to the arguments made on the motion just stated, the chancellor stated "I say that's in the nature of a *de novo* proceeding, and that will be my ruling." No exception was taken by the Bureau to this ruling of the chancellor that the hearing would be held *de novo*.

Whether or not the denying of the motion of the Bureau by the chancellor, upon the objection of Mr. Bloomer, was in error, or that the hearing was a *de novo* one as Mr. Bloomer suggested, is now immaterial.

█ No exception was taken to such ruling, and the record before us discloses that the hearing before the chancellor proceeded upon that theory, acquiesced in by court and counsel. The ruling of the chancellor thus became the law of the trial. *Perkins* v. *Vermont Hydro-Electric Corp.*, 106 Vt. 367, 417, 177 A. 631.

█ The record of the case below discloses that the transcript of the hearing before the commissioner, as well as the various exhibits introduced in that proceeding, by agreement of the parties, were made part of the record before the chancery court. The agreement provided that such transcript would have the same effect as though the testimony had been given in person before the chancellor, and with a right of further cross-examination reserved to both parties. In effect, this amounted to a presentation by the Bureau of its evidence in support of the proposed rate increase as not being unfair, discriminatory or unreasonable. 8 V.S.A. Sec. 4660.

The appeal of the appellant to this Court is from the decision of the chancellor, which, like the prior decision of the commissioner, approved the proposed rate increase. Error is also

claimed in certain findings of fact made by the chancellor as well as claimed error in failing to find facts in accordance with request made by the appellant.

■ Before proceeding to a consideration of the briefed exceptions of the appellant it is necessary for us to have in mind the posture of the case presented. A trial *de novo* in an appellate tribunal commonly designates a trial as though no action whatever had been instituted in the court below, an action in which evidence is heard anew and the probative effect thereof determined. C.J.S. Appeal and Error, Sec. 1524, p. 988.

"Except insofar as errors or informalities before the trial court may involve an entire change of the cause or form of action, errors committed by the court below can have no effect on the appellate court in determining the rights of a party on a trial *de novo* and are immaterial and will not be considered." 5 C.J.S. Appeal and Error, Sec. 1528(c), p. 1017.

■ It follows that our determination here is confined to whether the decision of the chancellor is supported by the findings of fact made by him, and whether such findings of fact are supported by the evidence presented to the court of chancery.

Appellant's first briefed exception is to the form of the requests to find submitted by the Bureau to the chancellor. This submission, in addition to containing various requests to find facts, also included additional material in the form of arguments advanced by the Bureau to induce the acceptance of the requests by the chancellor, which arguments contained references to the evidence before the court as well as the citation of legal authorities.

We are not aware of any established form that must be followed in making requests for findings of fact, nor has appellant cited any. We agree with the appellant that it has not been the custom to bolster requests to find facts with arguments in ordinary cases when tried by court or chancellor.

However, in cases before governmental agencies dealing with specialized subjects, such as those before the Public Service Commission, the practice has been followed. *Petition of New England Telephone and Telegraph Co.,* 115 Vt. 494, 501, 66 A.2d 135. The cause before the chancellor here, involv-

ing the setting of rates by casualty insurance companies, was on a specialized subject, requiring the acquisition of some expert knowledge on the part of the trier of fact.

■ ■ One purpose in submitting requests to find to a trier of fact is to aid the trier in making full and necessary findings. In the absence of any rule to the contrary, it must be left to the discretion of the one submitting the requests to a trier as to what such requests shall contain in the way of content. If arguments are advanced to sustain the requests to find the persuasiveness of such arguments are for the determination of the trier. A careful trier should have no difficulty in sifting objective facts from argumentative advocacy.

■ We find nothing improper for a party to submit a written argument in favor of its request to find as was done here. Appellant could have also submitted written arguments in support of his own request, or failing that, could have submitted written arguments to the chancellor in opposition to those submitted by the Bureau.

■ The appellant raises the question whether the chancellor could have made a final order in this case, when the appellant had moved that if the chancellor did consider the arguments submitted with each request to find submitted by the Bureau, he, the appellant, requested that such arguments be made orally and that the appellant should have the opportunity to reply to them, also orally. The motion was never acted upon in so many words by the chancellor. We would first point out that the appellant, in order to preserve this question for review, should have obtained an actual ruling on the matter. 5 Am.Jur.2d Appeal and Error, Sec. 557; 4 C.J.S. Appeal and Error, Secs. 320, 321. While the record fails to disclose a specific ruling on the appellant's motion, the fact that it proceeded to hear the merits of the case has an implied ruling that the appellant's request for oral argument was denied. *Vermont Shade Roller Co.* v. *Burlington Traction Company,* 103 Vt. 293, 307, 153 A. 563.

Appellant's first exception to the findings of fact is to No. 17:

"17. It is true that the Commissioner didn't personally check or audit the data submitted by the Bureau, but the

work of the Bureau is periodically examined by auditors sent in by various state insurance departments designated by the National Association of Insurance Commissioners. The Commissioner has personally exercised the visitation rights conferred on him by the Vermont statute."

The contention of the appellant is that such finding is not supported by the evidence.

There was evidence before the chancellor that the auditors who examined the data of the Bureau at its New York office, and who were designated for such employment by the National Association of Insurance Commissioners, represented the Vermont Commissioner of Insurance, as well as similar officials in other states. Such evidence supports the first sentence of the finding of fact.

In his exception to the last sentence of the finding, it is evident that the appellant had in mind 8 V.S.A. Sec. 4653, which provides that rating bureaus "shall be subject to visitation, supervision and examination by the commissioner as often as he deems expedient." Appellant's claim is that this finding is at fault because the evidence is that the commissioner never made a personal visitation to the Bureau.

■ Nothing in 8 V.S.A. Sec. 4653 makes mandatory a personal visitation to the Bureau by the commissioner, and finding 17 makes it explicit that such personal visitation was not made. The sentence objected to, in the light of the entire finding, is to the effect that such rights were "exercised" by the commissioner through the visitation of the auditors who were his representatives. It would be a physical impossibility for the commissioner, as an individual, to visit each rating bureau, although he possesses such right. Furthermore, the provisions of 8 V.S.A. Secs. 4651–4663, as they existed at the time of the hearings contemplate and authorize the use of rating and advisory organizations. We find no error here. The fact that the chancellor's use of the word "personally" in Finding 17 where it is stated the commissioner "did not personally check or audit" but "has personally exercised the visitation rights" is merely an exercise in semantics, and does not disclose a conflict in the findings.

We consider now the appellant's exception to No. 19 and No. 20, quoted below:

"19. The process of data collection and compilation necessarily involves a time lag of some magnitude, but at the time the filing was made, the data presented were the latest available as a practical matter. There is no showing, on the evidence that the trends thereby indicated are inaccurate in any matters of substance, and on the evidence presented, there is no indication of unfairness, unreasonableness, or discrimination."

That part of Finding 20 excepted to, reads as follows:

"The Bureau uses as a base for evaluating past experience, the most recent accident-year experience available."

Appellant's exceptions to these findings are that the data upon which the finding was made was not the latest available. It is his contention that the data included in Bureau's Exhibit 1, showed that the periods ending December 31, 1965 and March 31, 1966 showed paid losses in lesser amounts than the paid losses as of September 30, 1965 on the basis of which the allowance for the new rates was allowed.

In considering the question presented we note that in Finding 18 the chancellor stated that he could not find that the statistical data presented by the Bureau represented the best possible compilation and analysis of the experience of the past. He does, however, find that for practical purposes it is fair and adequate basis for the formulation of rates in Vermont, and that it supports the Bureau's filing.

Exhibit 1, the filing for the rate increase, does state that the rate changes were determined from a review of the experience of all companies reporting their data to the National Bureau of Casualty Underwriters for the accident years ending June 30, 1964 and June 30, 1965, with the incurred losses valued as of September 30, 1965. However, there was evidence before the chancellor that later paid losses to which appellant refers, were considered in establishing the trend of incurred losses.

The chancellor had the right to select the time period for which data based on experience was available. *Central Vermont Public Service Corporation, Re Rates*, 116 Vt. 206, 210, 71 A.2d 576. His finding that the data presented for that period was a fair and adequate basis for the formulation of rates is not disputed by the appellant. The evidence before

the chancellor supports Nos. 19 and 20 of the findings of fact and no error is found.

The appellant next briefs collectively his exceptions to the chancellor's failure to find in accordance with appellant's requests to find numbered 5, 6, 7, 11, 12, 13, 14, 15, 19, 27, 28, 29, 30, 31, 32, 33, 35, 36 and 40.

It is not necessary to burden this opinion with a full recital of the contents of all the above numbered requests. We think it sufficient to state that these requests to find can be divided into two categories. One such category requests that the chancellor set forth in the findings the various duties and responsibilities of the commissioner of insurance as set forth in the statutes. Appellant's requests to find numbered 5 through 7 relate entirely to the duties of the commissioner of insurance under the statute and were not required, nor did they cover a subject that was proper to be included in the findings.

The remainder of such requests are for the chancellor to find various claimed errors on the part of the commissioner in the hearing before this official in Rutland in considering the evidence before him, as well as requests for the chancellor to find claimed errors on the part of the commissioner in carrying out his duties in rate fixing.

All of such requests to find are concerned with claimed error in the performance of his duties by the commissioner of insurance, and to the procedure followed in the hearing before the commissioner, as well as the decision of the commissioner on May 31, 1967.

The court of chancery took the identical subject matter that was previously before the commissioner with the right to introduce new evidence granted to both parties. The chancellor's jurisdiction became co-extensive with that previously exercised by the commissioner in the initial hearing. *Everett* v. *Wing*, 103 Vt. 488, 493, 156 A. 393; see also *Pitts* v. *Howe Scale Co.*, 110 Vt. 27, 35, 1 A.2d 695. Errors or irregularities on the part of the insurance commissioner were rendered harmless and irrelevant when the proceedings were presented *de novo* to the chancery court on appeal. If the disposition of the issue by the commissioner was unsatisfactory to the appellant, those same issues were subject to retrial and revision in the appellate court.

■ The only questions which this Court must consider are claims of error relating to the procedure of the hearing before the chancellor, the correctness of the findings of fact made by the chancellor based upon the evidence produced before him, and whether the chancellor's findings of fact support the chancellor's decision.

■ As the appellant suggests in his brief, it was the chancellor who assumed the regulatory duties involved in determining the fairness of the rates proposed by the Bureau on this appeal *de novo*. The appellant does not claim here that the chancellor was not aware of the statutes which govern the duties of the commissioner of insurance in the regulation of rates, or that he failed to exercise the duties imposed upon him by the *de novo* hearing to follow such requirements. In the absence of such showing, no necessity existed for the chancellor to recite in his findings the provisions of the statutes requested. Under the circumstances of the hearing before the chancellor, which is the only hearing on appeal to this Court, the requests were immaterial and were properly denied. *LaPlante* v. *Eastman*, 118 Vt. 220, 227, 105 A.2d 265.

The appellant's next briefed claim of error is in the chancellor's refusal to find as requested in appellant's request Nos. 11, 12, 13, 14, 15 and 19 collectively. Treating these requests collectively, as has the appellant, all of such requests are for findings on what particular exhibits were before the commissioner of insurance for his consideration at the hearing held before him in Rutland. It is apparent that appellant here seeks to have found that only Bureau's Exhibit 1, filed with the commissioner before the hearing by him, and not exhibits later introduced, could be considered by the commissioner in his determination on the proposed revision of automobile liability insurance rates.

What we have said above is equally applicable to the exceptions now under consideration. No error is found.

Exception has also been briefed to the chancellor's refusal to comply with No. 27 of the requests to find made by the appellant. Such request reads: "There is no data in Bureau's Exhibit No. 1 from which there can be computed any need for increase in rates in either the Rutland or Burlington area."

Such exception is further proof that appellant misunderstood the nature of the hearing in the court of chancery, which was *de novo*. In the hearing before the chancellor, in addition to Bureau's Exhibit 1, there was received in evidence Bureau's Exhibits 3, 4, 5 and 6, all admitted by agreement of the parties. In addition, Exhibit 7 was also offered in evidence by the Bureau, and admitted by the chancellor. Our examination of the evidence before the chancellor, particularly Exhibits 1 and 7, show a higher loss experience in Rutland and Chittenden counties than in the rest of the state.

Again, what the appellant is referring to in this exception is to evidence that could be properly considered by the commissioner in the hearing before him. But what we are concerned with is the evidence that was before the chancellor, and upon which his findings of fact could be sustained. Before the chancellor as evidence, in addition to Exhibit 1, were the various other exhibits, just enumerated. The finding requested would have no significance or materiality upon the decision of the chancellor, whose findings of fact and decision were determinable upon the evidence before the court of chancery, not upon the evidence before the commissioner at the time of the hearing before him. What has just been said applies as well to appellant's exception to the admission of Bureau's Exhibit 7. The exhibit was proper and admissible under the stipulation that additional evidence could be received and it was highly material to the rates in the Rutland and Burlington areas.

Appellant has also briefed a collective exception to the refusal of the chancellor to make findings of fact in conformance to the requests of the appellant numbered 28, 29, 30, 31, 32, 33, 35 and 36. All of such requests are that the chancellor find that the commissioner did not properly check the figures used in Bureau's Exhibit 1, the sources from which they were derived, or the business machines that made the various computations. What has already been said on appellant's exceptions to failure to find, as stated above, applies to these exceptions as well.

Appellant has also excepted to the chancellor's failure to find as requested in Request No. 40, reading: "Jury verdicts as such are not reflected in Bureau's Exhibit No. 1."

The record makes clear that the chancellor fully understood that jury verdicts were not reflected in Bureau's Exhibit 1. The appellant has not shown that he was prejudiced in any way by failure of the court to make a finding to this effect. *Taylor* v. *Henderson,* 112 Vt. 107, 119, 22 A.2d 318. No error is found.

In concluding, we now quote Findings 16 and 22 made by the chancellor, and to which the appellant has not here excepted:

"16. The statistics presented in support of the filing appear to be accurately compiled under a plan filed with the Vermont Department of Banking and Insurance and widely used throughout the United States, for rate-making purposes. They distribute insurance costs fairly by area and type of driver, with accidents being assigned to the place where the auto is principally garaged rather than the place of occurrence."

"22. To the compiled past experience data, the Bureau applies actuarial techniques and formulae to estimate or project future costs. No attempt is made to recover past losses, and the items provided for, *in futuro,* are (a) the payment of claims, (b) payment of operating expenses, and (c) a reasonable margin of underwriting profit. In the filed rates, this underwriting profit is calculated at 5% of premium which I find to be reasonable."

The decision of the chancellor rests largely on these points, unchallenged by the appellant. The result reached by the chancellor is supported by the facts found.

*The entry is "The order of the Washington County Court of Chancery is affirmed. Let the result be certified to the commissioner of insurance."*

NOTE: An opinion was filed in this case at the December Term, 1968. Thereafter, the appellant requested and was granted rehearing at the June Term, 1969, at which time the original opinion was recalled. Reargument resulted in modification of the original opinion without affecting the final result.