[Cite as *State v. Picard*, 2015-Ohio-431.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

      Plaintiff-Appellee

-vs-

JOHN S. PICARD

      Defendant-Appellant


JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. Sheila G. Farmer, J.
Hon. John W. Wise, J.

Case No. 14 CA 65


O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case Nos. 2008 CR 545H and 2009 CR 111H |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | February 5, 2015 |

APPEARANCES:

For Plaintiff-Appellee

BAMBI S. COUCH-PAGE
PROSECUTING ATTORNEY
JILL M. COCHRAN
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio 44902

For Defendant-Appellant

JOHN S. PICARD
PRO SE
BELMONT CORR. INSTITUTION
Post Office Box 540
St. Clairsville, Ohio 43950

*Wise, J.*

{¶1} Appellant John S. Picard appeals the July 16, 2014, decision of the Richland County Court of Common Pleas overruling his "Ex Parte Motion to Proceed to Judgment and Order, thereafter, to Vacate the Void Judgment With Prejudice."

{¶2} Appellee is State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶3} The facts as set forth in Appellant's previous appeals are as follows:

{¶4} In 1990, appellant was hired as the youth pastor at the Marion Avenue Grace Brethren Church in Mansfield, Ohio. In his position at the church, appellant and his wife Sherry had regular contact with teenage girls and young adult females in the church.

{¶5} Appellant formed close relationships with several of the girls in the youth group, distancing these girls from their family and friends. He referred to this smaller group as "the family," which was made up of appellant and his wife, several of the girls in the youth group, and eventually the girls' husbands as the girls grew older and married. As the leader, appellant controlled nearly every aspect of their lives. Appellant

influenced where the girls lived, who they dated or married, and what cars they purchased. Appellant spoke of having a large piece of land where the "family" could live in a large house with separate wings, sharing a common kitchen and dining area.

{¶6} H.G. began attending the Marion Avenue Church when she was twelve years old and moved in with her great aunt and uncle after her parents died. She began babysitting appellant's children when she was sixteen. When she was sixteen, she and appellant began kissing and fondling. One night, after eating dinner with appellant's family, H.G. went to the basement with appellant to spot him while he was working out. Appellant had H.G. perform oral sex on him. Appellant explained to H.G. that it wasn't sinful because it wasn't sex. On another occasion, appellant and H.G. were naked in the bedroom of appellant's home. Appellant digitally penetrated H.G.'s vagina, but appellant's son walked in before the encounter could go any further. H.G. left the area when she turned eighteen, but saw appellant one last time thereafter. Appellant drove her out into the country where they kissed and fondled each other, and H.G. performed oral sex on appellant.

{¶7} S.S. began attending Marion Avenue Church in her sophomore year of high school. Her mother had divorced for a second time, and she had to move in with her father. While involved with the youth group, S.S. would run errands with appellant. On one occasion they went for a motorcycle ride. Appellant reached between S.S.'s legs, claiming he was switching to an alternate gas tank. Like H.G., S.S. babysat appellant's children. On one occasion, appellant asked S.S. to stop at his house after a New Year's Eve party. When she arrived, the house was dark. Appellant took her into the bedroom, kissed her, pulled down her pants and touched her genital area. He asked

her to say, "Fuck me." Tr. 215. She became afraid because she had never seen appellant behave in such a harsh manner. She ultimately said what he asked her to say, although no penetration occurred. On Sundays after church appellant began taking S.S. by the hand and leading her to his office, where they would kiss and stroke each other. Appellant told her that being a youth pastor was difficult and he was frequently under attack, and this was a form of comfort his wife could not give him.

{¶8} During the summer of 2004, S.S. accompanied the youth group on a mission trip. While taking the garbage to the dumpster with appellant, he unzipped his pants and guided her head to his penis, asking her to put his penis in her mouth. He instructed her to perform oral sex on him in the back of a truck at a later time on the same mission trip. He told S.S. that this was something his wife could not do for him.

{¶9} S.W. was an only child from what she considered a normal family. However, as she became more involved with appellant and Sherry through the youth group, her relationship with her parents deteriorated. In the fall of 1995, appellant asked S.W. to kiss him. By 1996, S.W. considered appellant to be her best friend. Appellant told her that best friends engage in sexual acts with each other, claiming that the Bible states that Jonathan and David were best friends who engaged in sexual behavior together. He also told S.W. that when the Bible says a pastor should be a one-woman man, that just means he can't be with two women at the same time. He explained to her that his job was very taxing, and he needed her to fill him back up. Around 1996 or 1997, he asked S.W. to perform oral sex on him in the kitchen of his home. For the next ten years, she regularly engaged in oral sex and sexual intercourse with appellant. He told her it would be a worse sin for her not to have sex with him than it would be to have

sex with him, because God was protecting their relationship. Sometimes when S.W. did not want to have sex with appellant she cried, and appellant told her he liked it when she cried.

{¶10} G.R. attended the youth group at the Marion Avenue Church. She had been sexually abused by her father. G.R. also babysat for appellant and Sherry. When G.R. was 13 and appellant was driving her home after babysitting, he pulled into a wooded area and asked her to perform oral sex on him. Appellant told her that he believed God put her in his life for this special relationship because there were things Sherry could not do for him. Appellant and G.R. began engaging in oral sex and sexual intercourse on a weekly basis when she babysat for his children. Sometimes in his office in the church he would place her on his lap, rub her breasts and her genital area, and have her rub his genitals. During a game of hide and seek at a youth group overnighter at the church, appellant found G.R. hiding in the baptismal. He had G.R. perform oral sex on him in the baptismal. He told G.R. that he had consulted the Holy Spirit and had received peace that his relationship with G.R. was right. He told her that giving him oral sex was her God-given role as his comforter.

{¶11} J.F. is G.R.'s step-sister. Between the ages of 18 and 20, she began giving appellant oral sex in his office and in a storage room at the church. In April of 1999, when J.F. was 20 years old, she began engaging in sexual intercourse with appellant. After she moved into her own apartment in October, 2001, she and appellant engaged in sex once or twice a week. Appellant told her if she didn't have sex with him, he would terminate their friendship and she would be shunned by the church. Appellant hit J.F. at times, and threatened to tie her up if she did not comply with his request for

sex. Appellant told her that she was a special friend who had been chosen for him. He explained to her that their relationship was not different from those in the Bible, including Jonathan and David. He told her that in the Biblical account of the Last Supper where John leans on Jesus, it is possible that John had contact with Jesus' genitals. He also recounted the story, where Abraham places his hand on another man's thigh to make an oath, to support his claims that his relationship with J.F. was Biblically sanctioned.

{¶12} L.R. was 14 years old when she began attending the church with a friend. She admired and trusted appellant and thought of him more highly as a spiritual leader than anyone she had ever met. She longed to be a part of the group that was close to appellant and his wife. On one occasion when she was on the church bus alone with appellant, he told her that he thought she was very godly, and if anything happened to Sherry, L.R. is the kind of woman he would want for his wife. In 2004, L.R. asked to meet with appellant to learn how to memorize Scripture. When she went to appellant's office, he told her that things were hard and he needed comfort. He then placed L.R.'s hands on his genitals, telling her that his wife is not a comfort to him, and L.R. is the only one he could trust. When decorating for a wedding shower at the church, appellant pulled L.R. into his office and asked her for oral sex. She refused. However, in September of 2004 appellant convinced L.R. to perform oral sex on him. Eventually the oral sex progressed into sexual intercourse, and the sexual behavior continued regularly through December of 2007. He explained that this was not adultery, telling L.R., "You were given to me by God. You were made just for me." Tr. 635.

{¶13} In 2005, H.G. disclosed her involvement with appellant to a pastor at her new church. This pastor in turn relayed the allegations to the Marion Avenue church,

and H.G. was called before a council of pastors. H.G.'s claims were discounted by the church, but the church held a series of meetings about whether to retain appellant as youth pastor. His other victims attended these meetings, either standing in full support of appellant or remaining silent. Many members of the church had become concerned about appellant's close relationships with young women in the congregation, with one member referring to the group as appellant's "harem." Tr. 229.

{¶14} Although the congregation voted to retain appellant, he resigned from the church and made plans to form his own church with members of his "family." These plans fell apart in January of 2005 when S.S. confessed her relationship with appellant to her husband.

{¶15} Initially, police were not concerned with relationships between appellant and the girls after they turned 18, believing them to be consensual relationships between adults. Appellant was initially indicted in Case No. 08–CR–545 for sexual battery against H.G. and G.R. when they were juveniles. After the nature of the control and mental and spiritual coercion appellant exerted over the girls became apparent to police, the State moved to amend the indictment to include offenses against H.G. and G.R. after they turned 18, and to amend the statutory subsection in counts nine through sixteen, which related to H.G., to allege a violation of R.C. 2907.03(A)(1) rather than a violation of R.C. 2907.03(A)(9) because subsection (A)(9) was not in effect during the time period alleged in these counts.

{¶16} Appellant was later indicted in 09–CR–111 for sexual battery against S.W., L.R., J.F. and S.S. The cases were consolidated for trial.

**{¶17}** The case proceeded to a jury trial in the Richland County Common Pleas Court. Following trial, appellant was convicted of all charges and sentenced to an aggregate term of 40 years in prison, with 5 years mandatory post-release control. This Court affirmed the judgment on appeal. *State v. Picard,* 5th Dist. Richland No. 2009CA0108, 2010–Ohio–6358.

**{¶18}** Appellant filed a motion to reopen his appeal, arguing that counsel was ineffective for failing to raise a claim of insufficient evidence as to six of the eight counts of sexual battery against H.G. We granted the motion to reopen, and upon reopening found the evidence sufficient to support three of the eight counts of sexual battery against H.G. We reversed the convictions on the remaining five counts and remanded to the trial court for resentencing. *State v. Picard,* 5th Dist. Richland No. 2009CA0108, 2011–Ohio–6781.

**{¶19}** On remand, the court dismissed counts twelve through sixteen of the indictment, and resentenced appellant on counts nine through eleven. Appellant was sentenced to five years incarceration on Count 9, to run consecutive to counts 1, 5, and 10 and to counts 1, 9, 17 and 19 of Case No. 09–CR–111. He was sentenced to five years incarceration on Count 10, to run consecutive to counts 1, 5 and 9, and to counts 1, 9, 17 and 19 of Case No. 09–CR–111. On Count 11 he was sentenced to one year, to run concurrent to all other charges.

**{¶20}** Appellant again appealed to this Court. By Opinion and Entry dated June 27, 2014, this Court affirmed the trial court's sentencing decision.

**{¶21}** On September 2, 2014, appellant filed a motion for a delayed appeal in the Ohio Supreme Court. The Ohio Supreme Court denied his motion on October 22, 2014.

**{¶22}** On June 4, 2014, appellant filed a motion entitled Ex Parte Motion to Proceed to Judgment and Order, thereafter, to Vacate the Void Judgment With Prejudice. In said motion, Appellant moved the trial court to rule on the August, 2009, speedy trial motion.

**{¶23}** On June 12, 2014, the State responded, arguing that the motion was barred by *res judicata*.

**{¶24}** On June 20, 2014, appellant filed a reply.

**{¶25}** On July 16, 2014, the trial court overruled the motion, finding it to be an untimely motion for post conviction relief (by almost five years) and barred by *res judicata*.

**{¶26}** Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶27}** "I. WHETHER THE TRIAL COURT VIOLATED THE DEFENDANT'S DUE PROCESS AND EQUAL PROTECTION OF THE LAW RIGHTS BY ABUSING ITS DISCRETION OR COMMITTING PLAIN ERROR WHEN IT ATTACHED RES JUDICATA TO AN ACTION WITHOUT A FINAL APPEALABLE ORDER. SEE, ALSO, CRIM. R.52 (B)

**{¶28}** "II. WHETHER THE TRIAL COURT VIOLATED THE DEFENDANT'S DUE PROCESS AND EQUAL PROTECTION OF THE LAW RIGHTS BY ABUSING ITS DISCRETION OR COMMITTING PLAIN ERROR WHEN IT TREATED THE MOTION

TO PROCEED TO JUDGMENT AS A NO NAME MOTION AND CHANGED IT TO A PETITION FOR POST CONVICTION RELIEF. SEE, ALSO, CRIM. R. 52 (B)

{¶29} "III. WHETHER THE TRIAL COURT VIOLATED THE DEFENDANT'S DUE PROCESS AND EQUAL PROTECTION OF THETA RIGHTS BY ABUSING ITS DISCRETION OR COMMITTING PLAIN ERROR WHEN IT DECIDED THE DEFENDANT WAS RAISING CLAIMS THAT COULD HAVE BEEN RAISED ON DIRECT APPEAL WHEN IT RETAINED JURISDICTION BY NOT PROVIDING A FINAL APPEALABLE ORDER. SEE, ALSO CRIM. R. 52 (B)

{¶30} "IV. WHETHER THE TRIAL COURT VIOLATED THE DEFENDANT'S DUE PROCESS AND EQUAL PROTECTION OF THE LAW RIGHTS BY ABUSING ITS DISCRETION OR COMMITTING PLAIN ERROR WHEN IT RULED THE PETITION WAS UNTIMELY AS THE TRIAL COURT MADE THE DECISION TO TURN THE MOTION INTO A POST CONVICTION AND MADE IT SUBJECT TO ITS TIME FRAME. SEE, ALSO, CRIM.R. 52(B).

{¶31} "V. WHETHER THE TRIAL COURT VIOLATED THE DEFENDANT'S DUE PROCESS AND EQUAL PROTECTION OF THE LAW RIGHTS BY ABUSING ITS DISCRETION OR COMMITTING PLAIN ERROR WHEN IT IGNORED SUPERINTENDENT RULE 40 IN NOT RULING ON A MOTION BEFORE THE COURT FOR (5) YEARS. SEE, ALSO, CRIM.R.52(B)."

**I., II., III, IV., V.**

{¶32} We shall address Appellant's Assignments of Error together as they all address the trial court's denial of his June 4, 2014, motion. In these five assignments of error, Appellant argues that the trial court erred in denying his motion. We disagree.

**{¶33}** Appellant argues that the trial court erred in failing to rule on his motion to dismiss for speedy trial violations when it was filed in 2009, that he never had a final, appealable order in these cases, that the trial court erred in treating this instant motion as an untimely post-conviction relief petition and in finding his arguments barred by *res judicata*.

**{¶34}** A review of the docket in this case, reveals that that trial court did not file a judgment entry ruling on Appellant's motion to dismiss. However, upon review of the trial transcript in this matter, we find that the trial court orally denied appellant's motion to dismiss from the bench on August 20, 2009, prior to the commencement of trial. At that time, both sides presented argument as to the issue of a speedy trial violation.

**{¶35}** Even in the absence of a ruling on a motion, this Court presumes denial. *Newman v. Al Castrucci Ford Sales* (1988), 54 Ohio App.3d 166, 169; *Mancino v. Lakewood* (1989), 36 Ohio App.3d 219, 222. When a court fails to rule upon a motion, it will be presumed that the court overruled such motion. *Solon v. Solon Baptist Temple, Inc.* (1982), 8 Ohio App.3d 347, 8 OBR 458, 457 N.E.2d 858. By entering judgment in favor of the plaintiffs and dismissing defendant's counterclaim, the trial court implicitly overruled defendant's motion for leave to file an amended counterclaim. *See Lichtenstein v. L. Fish Furniture Co.* (1916), 272 Ill. 191, 111 N.E. 729, 731 (where court proceeds to trial of an action on counts against which demurrer was filed, express overruling of demurrer is unnecessary); *In re Automobile Liability Ins. Rates* (1969), 128 Vt. 73, 258 A.2d 826, 830 (where court proceeded to dispose of merits of case without oral argument, court impliedly overruled motion for oral argument.

**{¶36}** Regardless, appellant in fact raised this exact issue of the denial of his speedy trial motion in his prior appeal, *State v. Picard*, 5th Dist. Richland App. No. 2009 CA 0108, 2010-Ohio-6358. In said appeal, this Court performed a thorough analysis of appellant's speedy trial violation arguments under R.C. §2945.72 and found that, at most, 179 days elapsed of the 270 days, and accordingly overruled the assignment of error.

**{¶37}** As all of appellant's arguments raised in this appeal concern his motion to dismiss based on an alleged violation of his right to a speedy trial, we find such arguments are barred by the doctrine of *res judicata*.

**{¶38}** Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. *State v. Szefcyk,* 77 Ohio St.3d 93, 671 N.E.2d 233 (1996), syllabus, approving and following *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. Accordingly, "[t]o survive preclusion by res judicata, a petitioner must produce new evidence that would render the judgment void or voidable and must also show that he could not have appealed the claim based upon information contained in the original record." *State v. Poissant,* 5th Dist. Fairfield No. 2005–CA–90, 2006–Ohio–7310, ¶ 13.

**{¶39}** Appellant has previously appealed both his original judgment of conviction and sentence and his judgment on resentencing, and was represented by counsel in both proceedings. He has not produced new evidence that would render the judgment

void or voidable, and did not demonstrate that he could not have raised his new claims based on information contained in the record on his prior appeals to this Court.

{¶40} Accordingly, the trial court did not err in finding appellant's claims barred by *res judicata*.

{¶41} We likewise find that the trial court did not err in finding that the instant motion was an untimely post-conviction relief motion. Appellant's motion to dismiss meets the definition of a motion for post-conviction relief set forth in R.C. 2953.21(A)(1), if it was (1) filed subsequent to direct appeal, (2) claims a denial of constitutional rights, (3) seeks to render the judgment void, and (4) asks for vacation of the judgment and sentence. *State v. Reynolds,* 79 Ohio St.3d 158, 160, 679 N.E.2d 1131 (1997). Appellant's motion met this definition, and the trial court therefore did not err in treating his motion as a petition for post-conviction relief. Pursuant to R.C. §2953.21(A)(2), the petition had to be filed "no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication." Here, appellant filed his motion nearly five years late.

{¶42} Based on the foregoing, we find that the trial court properly denied appellant's motion to dismiss.

{¶43} Appellant's assignments of error are overruled.

{¶44} Accordingly the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Farmer, J., concur.

JWW/d 0127